2023-1661

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

**OMAN FASTENERS, LLC,**

Plaintiff-Appellee

**v.**

**UNITED STATES,**

Defendant

**MID CONTINENT STEEL & WIRE, INC.,**

Defendant-Appellant

_____

Appeal from the United States Court of International Trade in No. 1:22-cv-00348-MMB, Judge M. Miller Baker

_____

## REPLY BRIEF OF DEFENDANT-APPELLANT
## MID CONTINENT STEEL & WIRE, INC.

Adam H. Gordon
Jennifer M. Smith
Lauren Fraid
**THE BRISTOL GROUP PLLC**

Dated:  June 6, 2023

*Counsel to Defendant-Appellant Mid Continent Steel & Wire, Inc.*

**FORM 9. Certificate of Interest**                                    Form 9 (p. 1)
                                                                       March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1661 |
| **Short Case Caption** | Oman Fasteners, LLC, v. US |
| **Filing Party/Entity** | Mid Continent Steel & Wire, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/06/2023                     Signature:  /s/ Adam H. Gordon

                                     Name:       Adam H. Gordon

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Mid Continent Steel & Wire, Inc. | | Wholly owned by DEACERO USA Inc., a subsidiary of DEACERO S.A.P.I. de C.V. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable       ☐    Additional pages attached

| This Bristol Group PLLC | Adam H. Gordon | Jennifer M. Smith |
|---|---|---|
| Lauren Fraid | | |
| | | |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable       ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT .................................................................... 1

ARGUMENT ......................................................................................... 2

I.   THE COURT HAS JURISDICTION TO REVIEW THE
     TRADE COURT'S DECISION AND MID CONTINENT
     HAS STANDING TO APPEAL THE INJUNCTION ...................... 2

     A.   This Court Has Jurisdiction to Review the Trade
          Court's Decision ......................................................... 3

     B.   Mid Continent Has Article III Standing to Appeal
          the Permanent Injunction ........................................... 6

II.  OF'S FOCUS ON IRREPARABLE HARM DOES NOT
     NEGATE ITS LEGAL OBLIGATION TO PROVE ALL
     FOUR FACTORS NECESSARY TO RECEIVE
     INJUNCTIVE RELIEF .................................................................. 13

III. OF'S ADOPTION OF THE TRADE COURT'S ERRORS OF
     LAW, FACT, AND JUDGMENT SHOULD BE REJECTED ........ 15

     A.   OF Misrepresents the Record ............................... 16

     B.   OF Ignores the Legal Authority that Gives
          Commerce Discretion to Enforce Deadlines ........... 20

     C.   OF Has Not Demonstrated that Commerce's
          Application of Total AFA Was Unlawful ............... 29

CONCLUSION ...................................................................... 37

# TABLE OF AUTHORITIES

## CASES

*Atl. Sugar Ltd. v. United States,*
744 F.2d 1556 (Fed. Cir. 1984) ................................................. 29

*AVX Corp. v. Presidio Components, Inc.,*
923 F.3d 1357 (Fed. Cir. 2019) ................................................ 12

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.,*
967 F.3d 1353 (Fed. Cir. 2020) ............................................... 13

*BMW of N. Am. LLC v. United States,*
926 F.3d 1291 (Fed. Cir. 2019) ............................... 31, 32, 34, 35

*Canadian Lumber Trade All. v. United States,*
517 F.3d 1319 (Fed. Cir. 2008) ................................... 10, 11, 12

*Canadian Wheat Bd. v. United States,*
641 F.3d 1344 (Fed. Cir. 2011) ................................................. 8

*Celik Halat ve Tel Sanayi A.S. v. United States,*
557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ......................... 24

*Clinton v. City of N.Y.,*
524 U.S. 417 (1998) ..................................................... 10, 11

*Deacero S.A.P.I. de C.V. v. United States,*
996 F.3d 1283 (Fed. Cir. 2021) ......................................... 32, 33

*Dongtai Peak Honey Indus. Co., Ltd. v. United States,*
777 F.3d 1343 (Fed. Cir. 2015) ...................................... passim

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) .............................................................. 13

*Euzebio v. McDonough,*
989 F.3d 1305 (Fed. Cir. 2021) ......................................... 24, 25

*Fed. Crop Ins. Corp. v. Merrill,*
332 U.S. 380 (1947) ......................................................... 24, 25

*Higashi v. United States*,
    225 F.3d 1343 (Fed. Cir. 2000) .......................................................24, 25

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992) .........................................................................29

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................6, 7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ..........................................................................15

*Neo Solar Power Corp. v. United States*,
    190 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) .................................19, 35

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ........................................................29

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) .........................................................20

*Qingdao Sea-Line Trading Co. v. United States*,
    766 F.3d 1378 (Fed. Cir. 2014) ...................................................25, 26

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .........................................................6

*SeAH Steel VINA Corp. v. United States*,
    950 F.3d 833 (Fed. Cir. 2020) ..........................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..........................................................................7

*Stringfellow v. Concerned Neighbors in Action*,
    480 U.S. 370 (1987) ..........................................................................6

*Trinity Mfg., Inc. v. United States*,
    549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021), *aff'd*, No. 2022-1329,
    2023 WL 234228 (Fed. Cir. Jan. 18, 2023) (per curiam) ...22, 23, 27, 28

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ..........................................................................28

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ............................................................................ 20

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...................................................................... 7, 8, 9

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................ 15

*Wind Tower Trade Coalition v. United States*,
   741 F.3d 89 (Fed. Cir. 2014) ............................................................ 3, 4

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ............................................................................... 13

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................ 28

19 U.S.C. § 1516a(f)(3) ....................................................................... 3, 9

19 U.S.C. § 1677(9) ................................................................................. 9

19 U.S.C. § 1677(9)(C) ........................................................................ 3, 9

19 U.S.C. § 1677e(b) ........................................................................ 29, 30

19 U.S.C. § 1677e(b)(2) ......................................................................... 32

19 U.S.C. § 1677e(b)(2)(A) .................................................................... 33

19 U.S.C. § 1677e(c)(1) .......................................................................... 32

19 U.S.C. § 1677e(d)(1)(B) .................................................................... 33

19 U.S.C. § 1677e(d)(3) .......................................................................... 32

28 U.S.C. § 1292(a)(1) .......................................................................... 3, 4

28 U.S.C. § 1292(c)(1) .......................................................................... 3, 4

28 U.S.C. § 1295 .................................................................................. 3, 4

28 U.S.C. § 2631(j) ........................................................................ 9

## REGULATIONS

19 C.F.R. § 351.301(a) ................................................................ 20

19 C.F.R. § 351.301(b) ................................................................ 20

19 C.F.R. § 351.301(c) ................................................................ 20

19 C.F.R. § 351.302(a) ................................................................ 20

19 C.F.R. § 351.302(b) ................................................................ 20

19 C.F.R. § 351.302(c) ............................................................ 20, 21

19 C.F.R. § 351.302(c)(2) .............................................................. 21

19 C.F.R. § 351.302(d) ........................................................... 20, 30

19 C.F.R. § 351.103(b) ................................................................ 21

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Extension of Time Limits,*
   78 Fed. Reg. 57,790 (Dep't of Commerce Sept. 23, 2013) ........ 21, 28, 35

## MISCELLANEOUS AUTHORITIES

USCIT Rule 65 .............................................................. 3, 4, 5, 6

# SUMMARY OF ARGUMENT

OF's revisionist version of the record and applicable statutes, regulations, and judicial precedent is neither accurate nor in accordance with law.  Its arguments should be rejected and the Trade Court's decision to grant injunctive relief reversed.

*First*, OF's attempts to avoid review by this Court lack merit.  The Court has jurisdiction to review the clearly erroneous decision by the Trade Court granting permanent injunctive relief in favor of OF, and, by extension, its improper consolidation of the preliminary injunction and trial on the merits proceedings.  Moreover, as the Petitioner in the underlying administrative proceeding, OF's competitor, and an "interested party" by statute that would be "adversely affected or aggrieved" by a decision of the Trade Court, Mid Continent has both Article III and statutory standing to appeal the injunction.

*Second*, OF cannot escape its legal obligation to satisfy the four-factor test required to obtain injunctive relief merely by focusing on its irreparable harm claims, which are speculative and do not meet the stringent standard regardless.  OF has failed to meet its burden, and therefore, is not entitled to injunctive relief.

*Third*, OF, in effect, argues that this Court should ignore the Trade Court's abuse of discretion and its multitude of errors of law, fact, and judgment. In so doing, OF distorts the record and misconstrues statutes, regulations, and judicial precedent, attempts to eliminate Commerce's broad discretion to enforce its deadlines, and concocts new requirements and restrictions governing the U.S. Department of Commerce's ("Commerce") authority to apply total facts available with adverse inferences ("AFA"), and the AFA rate Commerce may select. OF's arguments do not comport with applicable statutes, regulations, and judicial precedent, and should be rejected.

In sum, OF fails to explain why (or how) this Court should affirm the Trade Court's clearly erroneous decision that permanently enjoined Commerce from requiring OF to pay 154.33% cash deposit rate.

## ARGUMENT

## I.    THE COURT HAS JURISDICTION TO REVIEW THE TRADE COURT'S DECISION AND MID CONTINENT HAS STANDING TO APPEAL THE INJUNCTION

This Court has jurisdiction to review the Trade Court's decision to permanently enjoin Commerce from requiring OF to pay the 154.33% cash deposit rate, which resulted from the Trade Court's consolidation

of hearing on the preliminary injunction with a trial on the merits

under USCIT Rule 65.  Additionally, Mid Continent — the Petitioner in

the underlying proceeding before Commerce, a competitor of OF, and an

"interested party" within the meaning of 19 U.S.C. §§ 1677(9)(C) and

1516a(f)(3) — has Article III and statutory standing to appeal.

## A.     This Court Has Jurisdiction to Review the Trade Court's Decision

This Court has jurisdiction over appeals of interlocutory orders

issued by district courts of the United States.  *See* 28 U.S.C.

§ 1292(a)(1).  Such jurisdiction applies to district court orders granting

injunctions.  *See id.* § 1292(a)(1).  Further, 28 U.S.C. § 1292(c)(1)

provides this Court exclusive jurisdiction of an appeal from an

interlocutory order granting an injunction where the Court would have

jurisdiction under 28 U.S.C. § 1295, which provides jurisdiction of an

appeal of a final decision of the Trade Court.  Thus, this Court

unquestionably has jurisdiction over appeals of interlocutory orders

involving injunctions that are issued by the Trade Court.  This Court

should reject OF's attempts to limit the Court's review authority.

OF asserts that "if this Court did have jurisdiction, it would be

under 28 U.S.C. § 1292(c)(1)," citing *Wind Tower Trade Coalition v.*

*United States*, 741 F.3d 89, 95 (Fed. Cir. 2014). *See* OF Br. at 4. The *Wind Tower* decision actually supports this Court's jurisdiction over the instant appeal under both 28 U.S.C. §§ 1292(a)(1) and 1292(c)(1). As explained in *Wind Tower*, "this court has held that §§ 1292(a), 1292(c)(1), and 1295 in conjunction confer jurisdiction upon this court over appeals of interlocutory orders issued by the CIT granting, continuing, modifying, refusing or dissolving injunctions." 741 F.3d at 95 (internal quotation marks and citation omitted).

OF also argues that jurisdiction is improper because the Trade Court's order remanding the proceeding back to Commerce "was not an injunction." OF Br. at 32. This is a *non sequitur*, because Mid Continent never argued that the Trade Court's remand instruction constitutes an injunction.

Mid Continent <u>does</u> assert, however, that the Trade Court improperly consolidated the proceedings under USCIT Rule 65 to reach the merits, which, in turn, led to the permanent injunction on appeal. *See* Mid Continent Br. at 22-25.

The Trade Court abused its discretion when it consolidated the hearing on the preliminary injunction with a trial on the merits under

4

USCIT Rule 65.  *See id.*  The Trade Court consolidated the appeal despite opposition by the parties, and despite imposing an expedited briefing schedule that severely constrained the time Mid Continent had to brief the issues below.  *See* Appx0001, Appx3123-3124, Appx3339.

Contrary to OF's claim, Mid Continent did not receive "a fair shot to analyze the evidence that the Trade Court considered."  OF Br. at 40.  OF argues that Mid Continent "complains that the 12 days it had with Oman Fasteners' reply-brief evidence was insufficient," and that any challenge thereto was forfeited once Mid Continent "withdrew its objection" to the timing of OF's submission of such evidence.  *Id.*; *see also id.* at 41 n.3.  To be clear, Mid Continent never withdrew its objection to OF's untimely-filed evidentiary submission.  In fact, only the U.S. Government stated that it would not object to OF's late-filed evidence.  *See* Appx4215-Appx4221.  Mid Continent maintained its objection to OF's last minute document dump and was never provided an opportunity to brief the Trade Court on evidence presented therein.[1]

---

[1] In a similar vein, because the Trade Court consolidated the cases over all of the parties' objections and converted OF's motion for preliminary injunction to a motion for permanent injunction, Mid Continent did not have an opportunity to present arguments to the Trade Court as to why the permanent injunction standard was improper.  This argument was

In short, consolidating the proceeding under Rule 65(a)(2) based on a one-sided, contested record where the parties were unable to fully brief pertinent issues and information was "clearly unreasonable," and constitutes an abuse of discretion. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147-48 (Fed. Cir. 2011).

## B. Mid Continent Has Article III Standing to Appeal the Permanent Injunction

OF erroneously argues that Mid Continent does not have Article III standing because the U.S. government is the only party enjoined from collecting estimated duty deposits at the 154.33% rate. *See* OF Br. at 2, 33-38. This argument misconstrues the requirements of establishing standing and disregards the impact of the Trade Court's injunction on Mid Continent.

"An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by a trial court." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-76 (1987). Standing is not automatically precluded even where a party is "not himself the object of the government action or inaction" being

---

not (and could not have been) forfeited or waived, despite OF's assertion to the contrary. *See* OF Br. at 29, 71-72.

6

challenged. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (internal citations omitted).

To establish Article III standing, a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61).

Injury in fact must involve a "concrete and particularized" "invasion of a legally protected interest" that is "actual or imminent." *Lujan*, 504 U.S. at 560. "For an injury to be 'particularized,' it 'must affect the {party} in a personal and individual way.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). Importantly, "{t}he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks and citations omitted).

OF argues that Mid Continent forfeited the issue of standing (specifically injury), and that it cannot establish Article III standing

regardless of such forfeiture. *See* OF Br. at 34-38. Both arguments are incorrect and should be rejected.

First, no forfeiture occurred. As OF is constrained to admit, Mid Continent's opening brief discussed the harmful impact (*i.e.*, injury) of the Trade Court's decision to grant OF's motion for injunctive relief, particularly in light of Mid Continent's role as both a domestic producer and the Petitioner who filed the AD case against OF. *See, e.g.*, *id.* at 35-36; *see also* Mid Continent Br. at 74-75. Indeed, OF acknowledges Mid Continent's position in these proceedings, stating that "Mid Continent was a party to the administrative proceedings before Commerce and thus directly involved in creating the agency record." OF Br. at 39.

Additionally, in its opening brief, Mid Continent described itself as "an intended beneficiary of the remedial effects of the antidumping duty laws included in the Tariff Act of 1930, as amended." Mid Continent Br. at 74 (citing *SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 837 (Fed. Cir. 2020); *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011)). Mid Continent has the statutory right to seek redress for unfair trade practices. The invasion of such legal rights

is sufficient to create standing under Article III. *See Warth*, 422 U.S. at 500.

Similarly, Mid Continent's intervention as of right before the Trade Court was based on three statutory provisions: (1) 28 U.S.C. § 2631(j); (2) 19 U.S.C. § 1516a(f)(3); and (3) 19 U.S.C. § 1677(9)(C). *See* Appx4118-4121. Intervention as of right by an "interested party" is permitted for "{a}ny person <u>who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade</u>...." 28 U.S.C. § 2631(j) (emphasis added). Mid Continent is an "interested party," which is defined as "a manufacturer, producer, or wholesaler in the United States of a domestic like product...." 19 U.S.C. § 1677(9)(C); *see also* 19 U.S.C. § 1516a(f)(3) (referring to 19 U.S.C. § 1677(9) for the definition of "interested party"). As these provisions make clear, 28 U.S.C. § 2631(j) in particular, Mid Continent is an "interested party" that would be "adversely affected or aggrieved" by a decision of the Trade Court. In other words, decisions of the Trade Court will have a direct effect on Mid Continent.

Moreover, in its opening brief Mid Continent discussed the artificial distortion of the market caused by the injunction ordering

Commerce to use a cash deposit rate of 1.65% rather than 154.33%. *See*

Mid Continent Br. at 75. "The real-world consequences of this error to

Mid Continent (and other market participants) are significant, in terms

of lost sales and lost revenue by virtue of improperly facilitated import

competition." *Id.*

Indeed, OF has admitted that higher antidumping duty rates have

a direct impact on its imports into the United States. In its reply brief

before the Trade Court, OF stated that when OF's nails were subject to

AD duty deposits of 9.07-9.10% between 2015 and 2017, "U.S. imports

of steel nails from Oman dropped 11%, from 47.8 million kilograms to

42.8 million kilograms; once the duties dropped to 0.63% in 2018,

import volumes jumped 37% to 58.7 million kilograms." Appx3306-

3307.

Both the U.S. Supreme Court and this Court have recognized that

"'competitor standing,' which relies on economic logic to conclude that a

plaintiff will likely suffer an injury-in-fact when the government acts in

a way that increases competition or aids the plaintiff's competitors," is

sufficient to satisfy the Article III injury in fact requirement. *Canadian*

*Lumber Trade All. v. United States*, 517 F.3d 1319, 1332 (Fed. Cir.

2008); *see also Clinton v. City of N.Y.,* 524 U.S. 417, 433 (1998) (stating that the U.S. Supreme Court "routinely recognizes" probable economic injury resulting from governmental actions "that alter competitive conditions as sufficient to satisfy" the injury component of Article III standing) (internal quotation marks and citations omitted).

This Court's decision in *Canadian Lumber* is particularly relevant. That case involved challenges to U.S. Customs' implementation of the Continued Dumping and Subsidy Offset Act ("CDSOA"), which amended trade laws involving distribution of antidumping and countervailing duties. *See generally Canadian Lumber,* 517 F.3d 1319. The Court held that "an empirical analysis linking specific CDSOA distributions to specific, demonstrated economic harms (e.g., lost sales, decreased market share)" was <u>not</u> necessary to prove "an injury-in-fact that is concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Id.* at 1332-33 (internal quotation marks and citation omitted). The Court further found that:

> {l}oss of market share is certainly an economic injury, and it is quite rational to infer that Customs, by distributing money to an entity that aims to take away market share from Canadian wheat and has already been somewhat successful in that effort, is likely to inflict further economic injury on the Canadian Wheat

> Board.  Indeed, fewer inferences are required to find injury-in-fact in this case than in most "competitor standing" cases, where it is <u>presumed</u> (i.e., without affirmative findings of fact) that a boon to some market participants is a detriment to their competitors.

*Id.* at 1334 (emphasis in original).

OF relies heavily on patent and trademark decisions from this Court.  *See* OF Br. at 34-35, 37.  Such reliance is misplaced.  In *AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357 (Fed. Cir. 2019), one of the cases OF cites, this Court distinguished the competitor standing analysis in patent cases from that in nonpatent cases, finding that reliance "on decisions that, in nonpatent contexts have found 'competitor standing'" "does not carry over to support standing" in the patent context that was at issue.  *Id.* at 1363.

In sum, Mid Continent will be directly affected by the outcome of this appeal, where Commerce has been enjoined from collecting cash deposits determined through lawful administrative processes and ordered to use a cash deposit rate nearly 1/100[th] the size.  Mid Continent's injury — the boon to OF and the detriment to itself — is clearly traceable to the challenged Trade Court decision, and is likely to be redressed by a favorable decision by this Court reversing the Trade

Court's decision, dissolving the injunction and ordering retroactive collection of larger cash deposits.  Mid Continent has standing under Article III.

## II.   OF'S FOCUS ON IRREPARABLE HARM DOES NOT NEGATE ITS LEGAL OBLIGATION TO PROVE ALL FOUR FACTORS NECESSARY TO RECEIVE INJUNCTIVE RELIEF

A party seeking injunctive relief, whether preliminary or permanent, must establish all four factors of the relevant test.[2]  *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1377 (Fed. Cir. 2020) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.") (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); Appx3690-3691 (J. Baker stating that it is "the

---

[2] OF erroneously states that the "only real difference" between the injunctive relief standards established by *eBay* and *Winter* "is that a permanent injunction requires <u>actual</u> success on the merits, whereas a preliminary injunction requires only <u>likely</u> success."  OF Br. at 71-72 (emphasis in original).  These standards involve different criteria.  *See* Mid Continent Br. at 25.  Further, Mid Continent did not waive its claim that the Trade Court applied the wrong standard because it did not have an opportunity to brief the Trade Court as to this issue.  *But see* OF Br. at 71.

Plaintiff's burden *i.e. Winter* to require that the Plaintiff to {*sic*} satisfy each of the four elements. In my view, the balancing test…has gone by the wayside since *Winter*."). OF failed to satisfy its burden before the Trade Court, and the Trade Court's conclusion that it did is clearly erroneous. The Trade Court's decision to grant injunctive relief should be reversed on this basis alone.

As it did below, OF singularly focuses on the "irreparable harm" factor. *See* OF Br. at 3, 16-18, 20-21, 24-25, 27-28, 42-50, 53-54. OF's speculative claims of irreparable harm do not satisfy the stringent injunctive relief standard. *See* Mid Continent Br. at 64-69. Even if OF could demonstrate irreparable harm, it cannot avoid the need to prevail on the remaining three factors.

OF's arguments before this Court illustrate how the Trade Court's irreparable harm analysis colored the remainder of its analysis. The Trade Court dedicated 12 pages of its opinion to discussing irreparable harm but spent only two pages and one footnote discussing <u>all</u> of the other three prongs. *Compare* Appx0025-0037 (discussion of irreparable harm) *with* Appx0025 n.14 (discussion of remedies available at law), Appx0037-0038 (discussion of balance of equities and public interest).

14

OF ignores the effect of the Trade Court's distorted analysis on the remainder of its decision, and instead merely regurgitates the Trade Court's findings.

In order to obtain injunctive relief OF must demonstrate that all four factors of the standard have been met. Neither the Trade Court nor OF can excuse OF from its obligations by asserting that irreparable harm exists, particularly where such claims are speculative. Indeed, demonstrating irreparable harm or any other individual factor on its own is insufficient to satisfy the standard. OF has failed to satisfy the four-factor test, and thus, is not entitled to injunctive relief.

## III.   OF'S ADOPTION OF THE TRADE COURT'S ERRORS OF LAW, FACT, AND JUDGMENT SHOULD BE REJECTED

The Trade Court made numerous errors of law, clearly erroneous factual findings, and clear errors in judgment by concluding that Commerce abused its discretion in rejecting OF's late-filed submission and applying AFA, and then finding that OF had satisfied the very rigorous standard to obtain the "drastic and extraordinary remedy" of injunctive relief. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)).

15

The Trade Court's errors include invalidating statutes and regulations, giving preamble language greater force and effect than the associated regulations, misinterpreting and misapplying statutory and regulatory requirements, and ignoring relevant judicial precedent. *See generally* Mid Continent Br. at 15-75. Any of one of these errors provides a sufficient basis for reversing the Trade Court's decision.

OF does not attempt to (and, in fact, cannot) remedy these errors. Instead, OF wraps itself in the Trade Court's decision, effectively arguing that this Court should ignore the Trade Court's abuse of discretion and affirm its legally and factually infirm judgment. OF distorts the record and misconstrues statutes, regulations, and judicial precedent.

## A.     OF Misrepresents the Record

First, OF states that "a partial 16-minute delay," was the basis for Commerce's rejection of the late filing. OF Br. at 5. This is incorrect. Commerce rejected OF's late submission and declined to retroactively extend the deadline because OF failed to demonstrate "extraordinary circumstances" because the company "made no attempt to contact Commerce and request an extension of the deadline," and instead,

"waited until 38 days after the untimely submission of the SCQR to bring any filing issues to Commerce's attention, two days after the SCQR was rejected and removed from the record." Appx1658. Commerce fully explained why OF's failure to file by the applicable deadline, despite multiple extensions, its failure to timely request an extension, and its unclean hands resulting from ignoring its lapse until Commerce rejected the filing constituted a failure to cooperate.

Second, OF misconstrues the circumstances surrounding its untimely submission. OF states that Commerce "warned that it would not likely grant 'any additional extension,'" and that on the filing deadline, "technology went awry," counsel encountered "the system's misleading and sluggish behavior {which} was usual," and because "ACCESS dragged" (whatever that means), OF missed the deadline. OF Br. at 12-13. OF also asserts that its "counsel made its best efforts at compliance, encountered a late-breaking and unexpected filing-system error, and then made a reasonable judgment call to attempt to complete the filing as quickly as possible." *Id.* at 59-60. The record belies these claims.

Contrary to OF's assertion, Commerce never "<u>warned</u> that it

would not likely grant any additional extension."  OF Br. at 12

(emphasis added).  Rather, after already giving OF an extra 11 days to

file its response, more than double the time initially provided,

Commerce stated that it "d{id} not anticipate providing any additional

extensions for Oman Fasteners' response," which is fundamentally

different.  Appx3091.  No "warning" was issued in this respect, and

Commerce never foreclosed the possibility of an additional extension.

In fact, to the extent that Commerce issued any warning, it was that

untimely filing could result in application of AFA.  *See infra* at 21, 30.

Additionally, OF neglects to mention that its lawyers' filing

problems were caused by human error and not by ACCESS.  *See*

Appx0143-0145.  The deadline was not missed because "ACCESS

dragged," as OF alleges.  OF Br. at 13.

Moreover, OF's counsel did not make reasonable efforts — let

alone "best efforts" — to ensure that OF's submission was timely and to

remedy its self-inflicted filing issues.  In OF's own words, its lawyers

missed the deadline for the following reasons:

- counsel "<u>fail{ed} to ensure</u> that all the electronic data files
  accompanying...{the} Response were confirmed in ACCESS

18

before the 5:00pm deadline, and <u>fail{ed} to recognize</u> the importance of immediately requesting an extension with respect to those electronic data files";

- "<u>counsel's expectations</u> regarding the time required to submit all the accompanying electronic data files <u>proved incorrect</u>";

- "<u>counsel failed to appreciate the materiality of the late submission</u> of certain of the electronic data files"; and

- "<u>counsel regrettably failed to appreciate</u> that {Commerce} would deem the entire submission untimely, and therefore failed to immediately request leave to submit out of time."

Appx0240-0256 (emphases added).

As the Trade Court has held previously, a respondent takes "reasonable measures" to prevent an untimely filing by "contact{ing} the ACCESS Help Desk before the deadline expired to receive assistance with a response to the technical problem." *Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1261 (Ct. Int'l Trade 2016). On the other hand, "failure to plan for contingencies, failure to call for help on {the deadline}, and failure to call on" the next business day, all of which occurred here, do not constitute "reasonable measures." *Id.* at 1263. These failures aptly describe OF's lawyers' conduct.

OF's warm embrace of the Trade Court's analysis does not relieve it of the burden to demonstrate that injunctive relief is warranted. As

discussed below, Commerce should be permitted to follow its regulations and use its broad discretion to determine when untimely submissions should be rejected and when untimely extension requests should be granted.

## B.    OF Ignores the Legal Authority that Gives Commerce Discretion to Enforce Deadlines

OF's attempts to eliminate Commerce's broad discretion to enforce its deadlines should be rejected.  Commerce derives such discretion from multiple regulatory provisions, including, but not limited to, 19 C.F.R. § 351.301(a), 19 C.F.R. § 351.301(b), 19 C.F.R. § 351.301(c), 19 C.F.R. § 351.302(a), 19 C.F.R. § 351.302(b), 19 C.F.R. § 351.302(c), and 19 C.F.R. § 351.302(d).

"Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978)).  "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an

20

agency regarding the development of the agency record." *Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (internal citation and quotation marks omitted).

Commerce's regulations provide established processes and timelines for submitting requested information and extension requests. *See* Mid Continent Br. at 31-32. For a request for extension made before the deadline, a party must provide reasons establishing "good cause." 19 C.F.R. §§ 351.302(b)-(c). The preamble to this regulation warns against filing a timely request too close to the deadline, and provides the following guidance in such situations:

> For submissions that are due at 5:00 p.m., if {Commerce} is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day. *See* 19 CFR 351.103(b).

*Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,792 (Dep't of Commerce Sept. 23, 2013).

Parties, like OF, that make a request for a retroactive extension after a deadline has been missed must "demonstrate{} that an extraordinary circumstance exists." 19 C.F.R. § 351.302(c). An "extraordinary circumstance" is "an unexpected event that: (i) Could

21

not have been prevented if reasonable measures had been taken, and

(ii) Precludes a party or its representative from timely filing an

extension request through all reasonable means." *Id.* at § 351.302(c)(2).

Commerce's questionnaire explicitly notified OF of the agency's

deadline and extension request requirements:

> If Commerce does not receive either the requested
> information or a written extension request before 5
> p.m. EST on the established deadline, we may conclude
> that your company has decided not to cooperate in this
> proceeding.  Pursuant to 19 CFR 351.302(d), any
> information submitted after this date will be untimely
> filed and may be returned to you.  In such case, we may
> rely on facts available, including adverse inferences, as
> required by section 776(a)(2)(B) of the Tariff Act of
> 1930, as amended (the Act), in making our
> determination.

Appx0101-0102.

Courts have expressly recognized Commerce's broad discretion

and significant interests in enforcing its deadlines, including the

agency's acceptance or rejection of extension requests.  *See, e.g.*, *Dongtai

Peak*, 777 F.3d 1343; *Trinity Mfg., Inc. v. United States*, 549 F. Supp. 3d

1370 (Ct. Int'l Trade 2021), *aff'd*, No. 2022-1329, 2023 WL 234228 (Fed.

Cir. Jan. 18, 2023) (per curiam).

In *Dongtai Peak*, this Court held that "{i}t is not for {respondent} to establish Commerce's deadlines or to dictate to Commerce whether and when Commerce actually needs the requested information." 777 F.3d at 1352 (internal quotation marks and citation omitted). Further, the Court found that "{b}ecause Dongtai Peak was aware of the deadline and had the opportunity to file an extension request prior to its expiration, its failure to do so indicates an inattentiveness or carelessness with regard to its obligations" that warranted application of AFA. *Id.* at 1355-56.

In *Trinity*, the Trade Court held that "{t}he current regulation defines how Commerce will exercise its discretion when it receives an untimely extension request. Rather than abuse that discretion, Commerce reasonably applied the criteria the amended regulation sets forth." 549 F. Supp. 3d at 1378. The court further explained that Commerce's "interests in deterring late filings" "are served by a rule confining the granting of such requests to extraordinary circumstances." *Id.* at 1378-79.

OF ignores the regulatory provisions and precedent affirming Commerce's discretion to enforce deadlines. *See* OF Br. at 65-66.

First, OF adopts the Trade Court's improper application of the preamble to the regulation for <u>timely</u> extension requests.  OF argues that at the time of its submission deadline, the "next-morning extension policy was still 'buried' by Commerce," and that on this basis, OF's counsel "reasonably believed that abandoning the filing to pursue a last-minute extension would be futile and only cause more delay."  OF Br. at 14.

OF's argument is meritless because:  (1) the preamble applies to <u>timely</u> extension request, not <u>untimely</u> requests; (2) the Trade Court improperly gave the preamble greater legal force than the regulation; (3) by doing so, the Trade Court rendered superfluous Commerce's regulations regarding deadlines; (4) the Trade Court's decision contravenes directly relevant precedent affirming Commerce's authority to enforce deadlines; and (5) the preamble, which was published in the Federal Register in 2013, was not "buried."  *See* Mid Continent Br. at 37-43.  OF minimally responds to these reversible errors, but even its cursory responses are erroneous.

For example, OF states that Mid Continent "offers no authority" contradicting the Trade Court's decision in *Celik Halat ve Tel Sanayi*

24

*A.S. v. United States*, 557 F. Supp. 3d 1348, 1361 (Ct. Int'l Trade 2022), where the Trade Court stated that publication of a preamble in the Federal Register did not provide sufficient notice.  OF Br. at 62-63.  To the contrary, the opening brief cites decisions of this Court and the U.S. Supreme Court holding that "publication of rules and regulations in the Federal Register gives legal notice of their contents to those subject to, or affected by, them, 'regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.'"  Mid Continent Br. at 43 (quoting *Higashi v. United States*, 225 F.3d 1343, 1349 (Fed. Cir. 2000) (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)); *accord Euzebio v. McDonough*, 989 F.3d 1305, 1314 (Fed. Cir. 2021)); *see also Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1370 (Fed. Cir. 2017) (recognizing "a broad, non-agency-specific default rule that Federal Register notices are treated as legally effective notices in a wide range of circumstances"); *Aris Gloves, Inc. v. United States*, 281 F.2d 954, 958 (C.C.P.A. 1958) ("Congress intended a proper publication in the Federal Register to be considered reasonable public notice unless otherwise provided by statute.").

Second, OF claims that these errors are "harmless" because of the Trade Court's conclusion "that Commerce abused its discretion by not explaining its arbitrary departure from its first-time-grace policy." OF Br. at 64; *see also id.* at 1-2, 22, 58 (arguing that OF qualified for the policy). Again, this is incorrect.

As Mid Continent explained in its opening brief, the Trade Court committed two errors of law in finding that Commerce "has a 'practice' of allowing a law firm one tardy filing—a 'one-bite rule,' as it were," based on a single statement in a different proceeding. Appx0018 (citing Letter to Arnold & Porter Kaye Scholer LLP, *Antidumping Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea* (Aug. 3, 2018), at 2-3 ("*Corrosion-Resistant Steel Products*")). OF failed to address either of these errors.

It is well-established that Commerce is not bound by its actions in prior proceedings because each proceeding "is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014). Further, "Commerce may change its conclusions from one review to the next based on new

information and arguments, as long as it does not act arbitrarily and it articulates a reasonable basis for the change." *Id.* at 1387.

Additionally, as Commerce made clear in *Corrosion-Resistant Steel Products*, the "practice is grounded in 19 CFR 351.301(a)." Appx0017. This regulatory provision reinforces Commerce's broad discretion to "request any person to submit factual information at any time during a proceeding or provide additional opportunities to submit factual information." 19 C.F.R. § 351.301(a) (emphasis added). This provision does not require Commerce to accept a late-filed submission, especially where the responsible party knew it missed the deadline but ignored the lapse for over five weeks.

Moreover, OF ignores Commerce's statement that no such "established practice" existed. Appx0305-0307. The Trade Court's and OF's disregard of Commerce's response does not render the agency's statement untrue. Indeed, the only support for this alleged "practice" that either the Trade Court or OF can cite is a statement in a single letter in an unrelated proceeding. *See* Appx0018.

Third, OF's attempt to distinguish relevant judicial precedent is meritless. OF argues that *Dongtai Peak* is distinguishable because the

27

respondent in that case submitted the untimely extension request and

submission 10 days after the deadline, and that "the party knew days

beforehand why it could not meet the deadline and could easily have

submitted the request then." OF Br. at 65-66. OF claims that this

situation "is markedly different from the circumstances here, where

ACCESS precleared the files only to unexpectedly reject them, and

Oman Fasteners could not have realized that it would miss the deadline

until minutes before that deadline arrived." *Id.* at 66. With respect to

*Trinity*, OF argues that unlike the respondent in that case, OF's

"counsel provided a detailed explanation for the technical issues,

including with the ACCESS filing system, that caused the 16-minute

filing delay." *Id.*

    Like the respondent in *Dongtai Peak*, OF's counsel knew that it

was encountering filing problems before the deadline — in fact, nearly

an hour earlier. *See* OF Br. at 12-13. OF was "aware of the deadline

and had the opportunity to file an extension request prior to its

expiration," and "its failure to do so indicates an inattentiveness or

carelessness with regard to its obligations." *Dongtai Peak*, 777 F.3d at

1355-56.

Moreover, OF's defense that it "provided a detailed explanation for the technical issues" disregards the "extraordinary circumstances" requirement for late-filed extension requests.  "Examples of extraordinary circumstances include a natural disaster, riot, war, *force majeure,* or medical emergency." *Extension of Time Limits*, 78 Fed. Reg. at 57,793.  However, "a technical failure of IA ACCESS generally is not an extraordinary circumstance." *Id.*  Thus, in contrast to *Trinity*, where the medical issues experienced by the parties' representative plausibly could have qualified as an example of an extraordinary circumstance (but were ultimately found not to qualify), OF's problems with ACCESS clearly do not.

## C.     OF Has Not Demonstrated that Commerce's Application of Total AFA Was Unlawful

Commerce's AFA determination must be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  Commerce's factual determinations will be upheld if they are

reasonable and supported by the record, even if some evidence detracts from them. *See Atl. Sugar Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Thus, Commerce's conclusions should be reversed only if the record contains evidence "so compelling that no reasonable factfinding" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

Commerce may apply AFA where a respondent "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). "Compliance with the 'best of its ability' standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The motive or intent (or lack thereof) behind a party's failure to cooperate to the best of its ability is irrelevant. *See id.*

A party's failure to timely submit information requested by Commerce may constitute a failure to cooperate to the best of its ability under 19 U.S.C. § 1677e(b), and warrant application of AFA. Commerce expressly warned OF of this possibility:

> If Commerce does not receive either the requested
> information or a written extension request before 5
> p.m. EST on the established deadline, we may conclude
> that your company has decided not to cooperate in this
> proceeding.  Pursuant to 19 CFR 351.302(d), any
> information submitted after this date will be untimely
> filed and may be returned to you.  In such case, we may
> rely on facts available, including adverse inferences, as
> required by section 776(a)(2)(B) of the Tariff Act of
> 1930, as amended (the Act), in making our
> determination.

Appx0101-0102.

This Court has upheld Commerce's application of AFA under such

circumstances:

> Because Dongtai Peak was aware of the deadline and
> had the opportunity to file an extension request prior
> to its expiration, its failure to do so indicates an
> inattentiveness or carelessness with regard to its
> obligations.  This warranted application of AFA.

*Dongtai Peak*, 777 F.3d at 1355-56.

Similar to *Dongtai Peak*, OF's failure to file the questionnaire

response in its entirety by the deadline and its choice to ignore its error

for over five weeks warrants application of AFA.  OF "waited until 38

days after the untimely submission of the {questionnaire response} to

bring any filing issues to Commerce's attention, two days after the

{questionnaire response} was rejected and removed from the record,"

Appx1658, and "did not provide a convincing explanation for why its

31

submission was late." Appx1670.  As a result, Commerce found that OF "failed to cooperate by not acting to the best of its ability when it failed to provide information to Commerce within established deadlines," Appx1666, "and, in doing so, greatly inhibited Commerce's ability to calculate an accurate dumping margin based on the respondent's own data." Appx1670.

Not surprisingly, OF seeks to distance itself from *Dongtai Peak*. *See* OF Br. at 65-66.  Yet OF provides no basis as to why that decision, which is directly on point and reflects the facts and law present here, does not support Commerce's application of AFA.

OF parrots the Trade Court's clearly erroneous judgment that Commerce's use of the corroborated petition rate as the AFA rate was punitive and not reflective of OF's misconduct.  *See, e.g.*, OF Br. at 10, 23, 61, 69-70.  OF makes two arguments that reflect the following errors:  (1) a misunderstanding of the statutory provisions regarding corroboration and the calculation of AFA rates; and (2) an attempt to align itself with *BMW of North America LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019), a decision involving distinct facts and procedures

that are not remotely relevant or analogous to the situation present here.

OF first argues, incorrectly, that "Commerce had selected the rate without adequate explanation or justification, contrary to the statute and this Court's precedent." OF Br. at 23 (internal citations omitted). This is simply baseless.

Commerce may rely on information from the petition, a final determination in the investigation, a previous administrative review, or any other information placed on the record when applying AFA to an interested party. *See* 19 U.S.C. § 1677e(b)(2). Commerce is not required to estimate what the non-cooperating party's dumping margin would have been if it had cooperated or demonstrate that the dumping margin reflects an alleged commercial reality of the party. *See id.* at § 1677e(d)(3).

When relying on the petition rate, Commerce "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at {its} disposal." *Id.* at § 1677e(c)(1). Commerce may corroborate the highest petition margin using individual transaction-specific margins. *See, e.g., id.* at §§ 1677e(b)(2)(A), (d)(1)(B), (d)(2);

*Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1300-1301 (Fed. Cir. 2021).

Contrary to OF's claim, Commerce did not "simply appl{y} a 'practice' to select 'the highest' possible adverse inference rate." OF Br. at 61 (quoting Appx4182). Rather, due to OF's failure to cooperate by first missing the deadline and then trying to fly under the radar, hoping the missed deadline would go unnoticed, Commerce reasonably selected the petition margin of 154.33% as the AFA rate for OF to induce future cooperation. *See* Appx1671. This margin had been corroborated previously. *See* Appx0062. In fact, Commerce did so using OF's own data. *See* Appx0073. Because Commerce properly corroborated the petition rate according to the statute, the agency has acted within its discretion, and the petition rate is not punitive as a matter of law. *See, e.g.*, *Deacero*, 996 F.3d at 1300 ("As long as a rate is properly corroborated according to the statute, Commerce has acted within its discretion and the rate is not punitive.") (internal quotation marks and citation omitted). Moreover, the only other margin options — 4.22 percent at most — were too low to induce future cooperation.

OF attempts to avoid this reality by relying on *BMW*.  *See* OF Br. at 10, 23, 61, 69-70.  OF's reliance on this decision is misplaced.

In *BMW*, this Court identified "unique factual circumstances," including that BMW believed that an administrative review, which had resumed two years after the underlying order was revoked, had been permanently terminated, and therefore, failed to respond to a questionnaire that Commerce had emailed to BMW's former counsel. *Id.* at 1294-96, 1298-99, 1302.  The Court found that it "cannot ascertain whether Commerce properly selected an AFA rate that was not unduly punitive" because "Commerce did not address how the procedural irregularities surrounding the administrative review process affected its view of BMW's level of culpability."  *Id.* at 1302.  The Court specifically identified the unique "procedural anomalies" and "years-long delay" as potentially "mitigating circumstances," *id.* at 1296, 1302.  As the Court made clear, *BMW* was unique.

In response, OF claims that "mitigating circumstances" exist here, in particular, "problems with ACCESS that were beyond Oman Fasteners' control."  OF Br. at 70.  This argument is belied by the record.

First, OF's filing issues in no way resemble the extreme circumstances, *i.e.*, "procedural anomalies" and "years-long delay," involved in *BMW*.

Second, problems with ACCESS generally do not qualify as an "extraordinary circumstance" that must be shown for untimely extension requests, let alone an anomaly constituting a mitigating factor. *Extension of Time Limits*, 78 Fed. Reg. at 57,793.

Third, OF's counsel did not mitigate the filing problems. Rather, it is uncontested that counsel failed to take "reasonable measures" to prevent an untimely filing by "contact{ing} the ACCESS Help Desk before the deadline expired to receive assistance with a response to the technical problem." *Neo Solar Power Corp.*, 190 F. Supp. 3d at 1261. Worse still, OF's counsel "waited until 38 days after the untimely submission of the SCQR to bring any filing issues to Commerce's attention, two days after the SCQR was rejected and removed from the record." Appx1658.

In short, *BMW* cannot save OF from Commerce's lawful application of the corroborated petition rate as the AFA rate.

## CONCLUSION

For the foregoing reasons, the Court should vacate the permanent injunction issued by the Trade Court, order retroactive imposition of the 154.33% cash deposit rate on imports of steel nails by or from OF effective on and after December 22, 2022, and, due to the potential mootness issues involved in this appeal (*see* CM/ECF No. 5), schedule oral argument forthwith.

Respectfully submitted,

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
Lauren Fraid, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700

Dated:  June 6, 2023

*Counsel to Defendant-Appellant Mid Continent Steel & Wire, Inc.*

37

# <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).

This brief contains 6993 words.

This brief complies with the typeface requirements Rule 32(a)(5) of the Federal Rules of Appellate Procedure, and the typestyle requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure.

This response has been prepared in a proportionally spaced type face using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Adam H. Gordon*
Adam H. Gordon
**THE BRISTOL GROUP PLLC**
Dated: June 6, 2023      *Counsel to Defendant-Appellant Mid Continent Steel & Wire, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of June, 2023, a copy of the

foregoing brief was served on the following party by operation of the

Court's electronic-filing system:

Michael P. House
Partner
**Perkins Coie LLP**
700 Thirteenth Street NW,
Suite 800
Washington, DC 20005
Email:  MHouse@perkinscoie.com

/s/ Adam H. Gordon
Adam H. Gordon
**THE BRISTOL GROUP PLLC**
*Counsel to Defendant-Appellant Mid
Continent Steel & Wire, Inc.*

Dated:  June 6, 2023