2023–1661

---

IN THE

# United States Court of Appeals for the Federal Circuit

---

Oman Fasteners, LLC,

*Plaintiff-Appellee*

v.

United States,

*Defendant*

Mid Continent Steel & Wire, Inc.,

*Defendant-Appellant*

---

Appeal from the United States Court of International Trade
in No. 22-00348, Judge M. Miller Baker

---

## Appellee's Motion to Dismiss Appeal as Moot

---

Michael R. Huston
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

Andrew T. Dufresne
Sopen Shah
Perkins Coie LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703

Michael P. House
Andrew Caridas
Jonathan I. Tietz
Perkins Coie LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
(202) 654–1736
MHouse@perkinscoie.com

Attorneys for Plaintiff-Appellee

January 29, 2024

## CERTIFICATE OF INTEREST

I certify that the information below is complete to the best of my knowledge.

Date: January 29, 2024       Signature: /s/ Michael R. Huston

                                       Name:       Michael R. Huston

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| Oman Fasteners LLC | n/a | Guerrero International LLC |

| 4. Other Legal Representatives | | |
|---|---|---|
| Perkins Coie LLP: | John M. Devaney | Shuaiqi Yuan* |
| *no longer with firm | Karl J. Worsham | Caroline Bisk* |
| | Angela R. Jones | |

| 5. Related Case |
|---|
| *Mid Continent Steel & Wire, Inc. v. United States*, No. 2023-1039 (Fed. Cir.). <br> *Oman Fasteners, LLC v. United States*, No. 2024-1350 (Fed. Cir.). |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| none |

## TABLE OF CONTENTS

Table of Authorities .................................................................................iv

Table of Abbreviations and Conventions ................................................. vii

Introduction ............................................................................................ 1

Background ............................................................................................. 4

    A.  Commerce imposed an extraordinary 154.33% cash deposit rate on Oman Fasteners' subject merchandise after the 6th Administrative Review. ................................................. 4

    B.  The Trade Court enjoined the government from collecting cash deposits at 154.33% and remanded for a lawful rate. ............................... 7

    C.  Mid Continent appealed the injunction but observed that the forthcoming 7th Administrative Review would moot the appeal. ........ 9

    D.  As Mid Continent predicted, Commerce implemented a new cash deposit rate in the 7th Administrative Review, mooting Mid Continent's appeal of the injunction. ...................................... 12

    E.  Mid Continent has refused to dismiss its appeal as moot. .................... 13

Legal Standard ....................................................................................... 15

Argument ............................................................................................... 15

    I.  This Court can no longer grant Mid Continent any relief in its interlocutory appeal of the superseded injunction. ...................................... 16

    A.  Mid Continent's challenge to the injunction is moot. .......................... 16

    B.  Mid Continent's challenge to the trial-management order is also moot. ...................................................................................20

    C.  The adverse-inference rate is unreviewable in this appeal because the injunction is moot. .................................................................. 22

    II.  Mid Continent must seek review in its co-pending appeal of the Trade Court's final determination, rather than maintain duplicative appeals. ... 22

Conclusion ............................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                            **Pages**

*Cabot Corp. v. United States,*
788 F.2d 1539 (Fed. Cir. 1986) ................................................. 9, 10

*Board of License Comm'rs v. Pastore,*
469 U.S. 238 (1985) ......................................................................... 3

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) ........................................................................15

*Dungaree Realty, Inc. v. United States,*
30 F.3d 122 (Fed. Cir. 1994) .........................................................18

*Fox Factory, Inc. v. SRAM, LLC,*
944 F.3d 1366 (Fed. Cir. 2019) .....................................................18

*Hendler v. United States,*
952 F.2d 1364 (Fed. Cir. 1991) .................................................... 22

*Medtronic, Inc. v. Teleflex Life Scis. Ltd.,*
86 F.4th 902 (Fed. Cir. 2023) ...................................................... 24

*Microsoft Corp. v. DataTern, Inc.,*
755 F.3d 899 (Fed. Cir. 2014) ...................................................... 24

*Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.,*
915 F.3d 764 (Fed. Cir. 2019) ...............................................15, 22

*Oman Fasteners, LLC v. United States,*
No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) .............. 3

*Oman Fasteners, LLC v. United States,*
No. 22-00348, 2024 WL 163368 (Ct. Int'l Trade Jan. 5, 2024) .......9, 13, 14

*Penda Corp. v. United States,*
44 F.3d 967 (Fed. Cir. 1994)......................................................... 10

*SmithKline Beecham Corp. v. Apotex Corp.,*
439 F.3d 1312 (Fed. Cir. 2006) ........................................................ 18

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ........................................................................ 15

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) .......................................................................... 20

*Syntex Ophthalmics, Inc. v. Novicky,*
795 F.2d 983 (Fed. Cir. 1986) ........................................................ 17

*Versata Software, Inc. v. Callidus Software, Inc.,*
780 F.3d 1134 (Fed. Cir. 2015) ........................................................ 3

**Constitution, Statutes, and Regulations**                **Pages**

19 U.S.C. § 1673 ................................................................................ 4

§ 1673d(c)(1)(B)(ii) .......................................................................5

§ 1673e .......................................................................................... 4

§ 1675.............................................................................................. 4

§ 1675(a)(1) .......................................................................... 11, 12, 17

§ 1677a............................................................................................ 4

§ 1677b .......................................................................................... 4

28 U.S.C. § 1292(a)(1)................................................................... 10

19 C.F.R. § 351.212(a) ....................................................................5

§ 351.212(e) ....................................................................................5

§ 351.221(b)(7) .................................................................... 11, 12, 17

**Other Authorities**                                        **Pages**

88 Fed. Reg. 85,878 (Dep't Commerce Dec. 11, 2023) .....................12

Fed. Cir. R. 27(a)(2) ............................................................15

Fed. R. App. P. 4(a)(1)(B) .................................................. 24

Trade Court Rule 65 ............................................................ 8

   Rule 65(a)(2) .............................................................7, 16

U.S. Dep't of Commerce, *Cash Deposit Instructions for Steel Nails from the Sultanate of Oman* (A-523-808), Message No. 3347411 (Dec. 13, 2023)..........................................................12

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Add___ | addendum to this motion page ___ |
| Appx___ | joint appendix page ___ |
| BlueBr___ | Mid Continent's opening brief page ___ |
| Commerce | U.S. Department of Commerce |
| Customs | U.S. Customs & Border Protection |
| Dkt. ___ | docket item ___ on appeal |
| GreyBr___ | Mid Continent's reply brief page ___ |
| Mid Continent | defendant-appellant Mid Continent Steel & Wire, Inc. |
| Oman Fasteners | plaintiff-appellee Oman Fasteners, LLC |
| RedBr___ | Oman Fasteners' response brief page ___ |
| Trade Court | United States Court of International Trade |

## Introduction

This appeal has become moot, because the injunction that provided the basis for appellate jurisdiction is no longer affecting any party's rights.

This case arose from a determination by the U.S. Department of Commerce imposing punitive antidumping duty cash deposits on the imports of Plaintiff-Appellee Oman Fasteners, Inc., at the conclusion of the 6th Administrative Review of the agency's antidumping order on *Certain Steel Nails from Oman*. Oman Fasteners sued the United States in the Court of International Trade to challenge Commerce's 6th review determination and sought a preliminary injunction against the agency's punitive rate. The Trade Court exercised its discretion to consolidate the proceedings on the preliminary injunction with a judgment on the merits. And in February 2023 the Trade Court ruled in favor of Oman Fasteners across the board: it entered judgment on the agency record in favor of Oman Fasteners, remanded the 6th review determination to Commerce, and enjoined Commerce from implementing that determination. The injunction meant that the government was required to collect antidumping duty cash deposits at the (reasonable) rate that Commerce had determined at the conclusion of the 5th Administrative Review, rather than the punitive rate from the 6th review.

The United States—the party enjoined by the Trade Court—declined to appeal the injunction; Commerce instead proceeded with its work on remand. This appeal was brought by Oman Fasteners' competitor in the marketplace, Defendant-Appellant Mid Continent Steel and Wire, Inc., which was the petitioner in the underlying antidumping case and an intervenor in the Trade Court proceedings. Mid Continent's appeal was always procedurally defective, as Oman Fasteners' brief to this Court previously explained. The Trade Court's *injunction* was the only possible basis for appellate jurisdiction in this appeal, and that injunction applied only against the government, so Mid Continent had no standing to appeal it.

Undeterred, Mid Continent moved this Court for expedited treatment because it recognized that this appeal would become moot in a matter of months. Mid Continent informed this Court (correctly) that, when Commerce completed its next annual review of Oman Fasteners' imports (the 7th Administrative Review, then expected to conclude in December 2023 or January 2024), that administrative determination would supersede the Trade Court's injunction and set the new antidumping duty deposit rate for Oman Fasteners' imports. At that point, Mid Continent observed, the injunction

would cease to have any effect and there would be nothing for this Court to resolve regarding the appeal of that injunction.

This Court denied Mid Continent's motion for expedited hearing, and things played out just as Mid Continent predicted: in December 2023, Commerce finished its 7th Administrative Review of Oman Fasteners' imports and set Oman Fasteners' antidumping duty margin at 0.0%. Commerce promptly put that new rate into effect by issuing new cash deposit instructions based on the 0.0% rate, superseding the Trade Court's injunction rate of 1.65%. As a result, the Trade Court's injunction at the root of this appeal no longer even arguably imposes any injury on Mid Continent. The relief that Mid Continent seeks through this appeal—to reverse or vacate the injunction—would have no effect on Oman Fasteners' cash deposit rate and thus could not conceivably affect Mid Continent's market position. In short: this appeal no longer presents any live case or controversy.

This Court has "stress[ed] the importance of parties informing this court promptly and without delay when a matter … may have become moot." *Versata Software, Inc. v. Callidus Software, Inc.*, 780 F.3d 1134, 1136 n.2 (Fed. Cir. 2015). The Supreme Court has stressed the same. *Board of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) ("When a development … could

have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court without delay." (emphasis omitted)). So once the government confirmed that the 7th Administrative Review rate had superseded the injunction cash deposit rate, Oman Fasteners promptly asked Mid Continent to stipulate to dismiss this appeal. Mid Continent refused, so Oman Fasteners now moves to dismiss.

## BACKGROUND

### A.    Commerce imposed an extraordinary 154.33% cash deposit rate on Oman Fasteners' subject merchandise after the 6th Administrative Review.

Oman Fasteners is a respondent under an antidumping order on steel nail imports from Oman. *See generally Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) (also at Appx1–39). Antidumping duties are meant to equal the amount by which the subject merchandise's "normal value" exceeds its export price, a difference called the "dumping margin." 19 U.S.C. §§ 1673, 1673e, 1677a, 1677b. Commerce reviews this rate periodically (usually each year) in administrative reviews, relying each time on more recent period data. *See* 19 U.S.C. § 1675.

The antidumping duty rate calculated in an administrative review of an antidumping order has two effects: one for past imports covered by the review period and one for future imports that have not yet been reviewed by Commerce. For covered imports, the rate set by an annual review is used to calculate the final amount of *actual* duties assessed. 19 C.F.R. § 351.212(e). For future imports, the rate determines the amount of *estimated* duties that an importer must deposit with U.S. Customs and Border Protection when it enters new merchandise into the United States, until Commerce determines the actual rate in a subsequent review. 19 U.S.C. § 1673d(c)(1)(B)(ii). The cash deposit rate from one administrative review thus stays in place until the next administrative review finishes, at which point the new rate supersedes the prior one for all imports going forward. 19 U.S.C. § 1673d(c)(1)(B)(ii); *see also* 19 C.F.R. § 351.212(a).

Oman Fasteners has continually cooperated with Commerce's administrative reviews into the proper rate for its imports, and Commerce has continually determined that Oman Fasteners' antidumping duty rate is zero or nearly so. *See* Appx23 n.12. Before the events giving rise to this case, Commerce had calculated a 1.65% rate for Oman Fasteners in the 5th Administra-

tive Review, and Customs had been collecting cash deposits at that rate. *See* Appx3–5, Appx22.

This appeal stems from the results of the 6th Administrative Review. In the proceedings before the agency, Oman Fasteners partially missed one administrative filing deadline by 16 minutes when it encountered an unforeseeable technical glitch in Commerce's e-filing platform. Appx2–3. That 16-minute delay prejudiced no one, yet Commerce responded by imposing what amounted to a corporate death sentence: the agency refused to consider any of Oman Fasteners' factual submissions, treated Oman Fasteners as though it had entirely failed to cooperate in the investigation, and imposed an extraordinary 154.33% "adverse inference" duty rate (a 93-fold increase over the prior rate) under rules reserved for penalizing importers that deliberately obstruct Commerce's investigations. Appx2–4, Appx7–10, Appx21–23.

Commerce thus ordered Oman Fasteners to pay an antidumping duty of more than $400 million on the past imports covered by the 6th annual review. And moving forward, Commerce's draconian order would have required Oman Fasteners to pay an impossibly high cash deposit of 154.33% of the value of all steel nails that it imported into the United States—a com-

modity product that accounts for nearly all the company's business—until Commerce completed its next annual review. Appx2–4, Appx25–26.

### B. The Trade Court enjoined the government from collecting cash deposits at 154.33% and remanded for a lawful rate.

Oman Fasteners could neither pay such deposits nor survive a protracted cessation of its business operations. Appx24–38. Facing an existential crisis, Oman Fasteners sought judicial review and emergency injunctive relief. It challenged Commerce's decision at the Trade Court and sought a preliminary injunction to restore the prior rate (1.65%) that had been operative before Commerce's decision to impose the catastrophic adverse-inference rate. Mid Continent, the petitioner in the administrative antidumping investigation, intervened. Appx10–11.

After briefing and an evidentiary hearing, the Trade Court exercised its discretion to consolidate Oman Fasteners' motion for a preliminary injunction with a trial on the merits under the court's Rule 65(a)(2) because the parties' presentations had given the Trade Court everything is needed to fully resolve Oman Fasteners' legal objections to Commerce's 6th review determination. Appx34, Appx10. The Trade Court found that "Commerce's challenged actions here are the very definition of abuse of discretion," so it

"grant[ed] judgment on the agency record in favor of" Oman Fasteners and ordered Commerce to recalculate Oman Fasteners' duty rate for the 6th Administrative Review after considering Oman Fasteners' full submission to the agency. Appx4–5. The Trade Court also entered an injunction under its Rule 65 directing Commerce to collect cash deposits at the rate that was in place before Commerce's unlawful selection of the punitive "adverse inference" rate. Appx4–5, Appx19–21, Appx24, Appx38–39.

The Trade Court determined that, when Commerce chose to cripple Oman Fasteners' business because of a single, nonprejudicial filing delay, the agency abused its discretion in three independent ways: first by refusing to accept Oman Fasteners' submission, Appx13–19; second by applying an adverse inference, Appx19–21; and third by selecting the maximally punitive 154.33% rate, Appx21–23. The court observed that this was "not a close case." Appx13. And based on the extensive documentary evidence and testimony submitted at a detailed evidentiary hearing, the Trade Court also determined that an injunction was warranted during the remand process to prevent irreparable harm to Oman Fasteners. Appx24–38. The court explained that, without that injunction, Oman Fasteners would likely have become insolvent before the redetermined rate became final. Appx26–31, Appx36–37.

Commerce accepted the remand and worked to determine the proper and lawful antidumping duty rate for the 6th Administrative Review. Mid Continent participated in that process. *See Oman Fasteners, LLC v. United States*, No. 22-00348, 2024 WL 163368, at *1 (Ct. Int'l Trade Jan. 5, 2024) (summarizing Commerce's remand redetermination).

### C.    Mid Continent appealed the injunction but observed that the forthcoming 7th Administrative Review would moot the appeal.

The United States did not appeal the Trade Court's injunction, but Mid Continent did. Notably, Mid Continent did not appeal the Trade Court's *remand* order because it could not: that order was non-final, and this Court would have lacked jurisdiction to consider an appeal from it. *See Cabot Corp. v. United States*, 788 F.2d 1539, 1542–1543 (Fed. Cir. 1986) ("Where, as here, the trial court remands to the administrative agency for additional findings, determination, and redetermination, the remand order is not appealable even though the order resolves an important legal issue[.]"). Instead, Mid Continent claimed to appeal just two things: the Trade Court's injunction against the government and its procedural order that had consolidated the preliminary injunction hearing with a trial on the merits. *See* BlueBr2 (Mid Continent's issue statement, identifying same); Dkt. 4 at 1 (Mid Continent's

docketing statement, identifying the relief sought on appeal only as reversal of the injunction); Dkt. 5 at 20 (Mid Continent's motion to expedite calling this case an "appeal of the Trade Court's permanent injunction").[1]

Mid Continent sought to reinstate the 154.33% rate going forward for Oman Fasteners, but Mid Continent knew that any such relief would be temporary. The injunction affected only whether the government could use the original 6th Administrative Review determination to collect cash deposits going forward on Oman Fasteners' imports at 154.33%—the injunction instead required Commerce to keep using the cash deposit rate from the 5th Administrative Review (1.65%). Meanwhile, Commerce was underway on the

---

[1] Mid Continent's appeal was always jurisdictionally dubious, as Oman Fasteners' appellate brief explained. The Trade Court's injunction against Commerce's order would have been appealable *by the government*— the only enjoined defendant—under 28 U.S.C. § 1292(a)(1). But Mid Continent never plausibly explained how it suffered injury in fact from an injunction constraining Commerce's collection of *estimated* antidumping duty deposits—as opposed to the ultimate determination of how much Oman Fasteners must pay in duties for its imports. A trial-level intervenor generally does not have Article III standing to appeal a judgment issued against a primary defendant that the defendant itself has not appealed. *See, e.g., Penda Corp. v. United States*, 44 F.3d 967, 971 (Fed. Cir. 1994). And Mid Continent lacked a jurisdictional basis to appeal the Trade Court's procedural consolidation order electing to issue a judgment on the merits because that judgment was not an injunction and was not final while the remand to Commerce remained ongoing. *See Cabot*, 788 F.2d at 1542–1543.

7th Administrative Review, and once completed, *that* rate would automatically become the cash deposit rate for Oman Fasteners by ordinary operation of law, regardless of any dispute over the 6th Administrative Review. *See* 19 U.S.C. § 1675(a)(1) ("At least once during each 12-month period … the administering authority … shall … review, and determine … the amount of any antidumping duty … and shall publish in the Federal Register the … estimated duty to be deposited … ."); 19 C.F.R. § 351.221(b)(7) ("If the review involves a revision to the cash deposit rates for estimated antidumping duties or countervailing duties," Commerce will "instruct the Customs Service to collect cash deposits at the revised rates on future entries."). At that point, the Trade Court's preliminary injunction—and any ruling from this Court regarding that injunction—would have no effect.

Mid Continent recognized this. It moved this Court to expedite its appeal based on the legal reality that the "final result" in the 7th Administrative Review "supersedes the margin from the sixth review" and thus would "render[] moot this appeal." Dkt. 5 at 14–17. Oman Fasteners opposed Mid Continent's motion, not because it disagreed about mootness but because that risk did not justify the breakneck briefing that Mid Continent wanted and because the equities favored Oman Fasteners. Dkt. 8 at 12–14.

This Court denied Mid Continent's request to expedite. Dkt. 12. A few months later, Mid Continent's reply brief continued to assert that this appeal would be imminently moot. *See* GreyBr37 (asking this Court to "schedule oral argument forthwith" "due to the potential mootness issues involved in this appeal (*see* CM/ECF No. 5)").

### D. As Mid Continent predicted, Commerce implemented a new cash deposit rate in the 7th Administrative Review, mooting Mid Continent's appeal of the injunction.

Mootness came just as Mid Continent said it would. After briefing was over in this appeal, Commerce calculated a new dumping margin for Oman Fasteners of 0.0% in the 7th Administrative Review. 88 Fed. Reg. 85,878 (Dec. 11, 2023). Commerce then promptly instructed Customs to start collecting cash deposits at the revised antidumping duty rate of 0.0% for entries on or after December 11, 2023. U.S. Dep't of Commerce, *Cash Deposit Instructions for Steel Nails from the Sultanate of Oman* (A-523-808), Message No. 3347411, 2 ¶ 2 (Dec. 13, 2023) (Add3); *see also* 88 Fed. Reg. at 85,879.

This was normal. When Commerce issues its final results in a subsequent administrative review, the calculated final dumping margin rate becomes the cash deposit rate for new imports going forward. 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.221(b)(7); Dkt. 5 at 14–17 (Mid Continent ex-

plaining the same). So when Commerce issued its 7th Administrative Review results, the calculated 0.0% rate became the statutorily required cash deposit rate, superseding any prior cash deposit rate (including the Trade Court's injunction rate) as a matter of law.

At that point, Mid Continent's challenge to the injunction was moot: even if this Court agreed with Mid Continent and wiped out the Trade Court's prohibition against using the 154.33% rate from the original results of the 6th Administrative Review, that rate would not take effect because the window had closed for the 6th Administrative Review results to serve as the basis for the cash deposit rate. Or as Mid Continent described the 7th Administrative Review's effect: "This cash deposit rate will supersede the 1.65 percent [injunction] rate imposed by the Trade Court, thus *mooting any challenge* to the permanent injunction." Dkt. 5 at 16 (emphasis added). On that one point, Mid Continent had it exactly right.

### E.    Mid Continent has refused to dismiss its appeal as moot.

Once Customs deployed the new 7th Administrative Review rate, that should have been the end of this appeal. All the more so because, in January 2024, the Trade Court sustained Commerce's final remand redetermination for the 6th Administrative Review at 0.0%. *Oman Fasteners*, 2024 WL 163368,

at *1, *4. In other words, Commerce determined that after considering Oman Fasteners' administrative submission without an artificial penalty, the correct antidumping margin was 0.0%. And Mid Continent has already noticed an appeal of that (now final) judgment in this Court in No. 2024-1350. So Mid Continent will have an opportunity to make its arguments (meritless though they are) that the Trade Court should have sustained Commerce's draconian administrative punishments and its original 6th Administrative Review rate of 154.33%, and should not have issued its judgment on the merits remanding the 6th Review based on the preliminary injunction proceedings. The Trade Court's *injunction*, however—the only order lawfully appealed from in *this* appeal—no longer affects anyone's rights and would not do so no matter what this Court might conclude in this appeal.

Oman Fasteners' counsel, mindful of parties' obligations to alert the Court about jurisdictional developments, asked Mid Continent's counsel to stipulate to dismiss its interlocutory appeal in accord with its prior representations to the Court when it sought expedited briefing and fast-track oral

argument. But Mid Continent did not agree to do so, so it was necessary for Oman Fasteners to file this motion.[2]

## Legal Standard

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–342 (2006) (citations omitted). Article III demands a "concrete injury" that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 341 (2016). The controversy must persist "at all stages of review," and when "the potential for injury has been mooted by events," this Court is "deprived of jurisdiction." *Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*, 915 F.3d 764, 770 (Fed. Cir. 2019).

## Argument

This interlocutory appeal is moot. Mid Continent's appeal asked this Court to vacate the Trade Court's injunction so that Commerce's enjoined 154.33% cash deposit rate could be reinstated until the 7th Administrative

---

[2] Consistent with Federal Circuit Rule 27(a)(2), Oman Fasteners' counsel informed Mid Continent that it would file this motion. Mid Continent's counsel stated that it opposes the motion and intends to file a response.

Review was completed. But that 7th Review has now been completed and has established a new deposit rate that controls irrespective of the Trade Court's injunction. There is also now a new final rate in the 6th Administrative Review. Both are 0.0%. Mid Continent's request to this Court to vacate the injunction against the original 6th Administrative Review rate would have no effect—either for Mid Continent or Oman Fasteners.

## I. This Court can no longer grant Mid Continent any relief in its interlocutory appeal of the superseded injunction.

Mid Continent appealed from two orders of the Trade Court: (1) an injunction preventing Commerce from implementing its 154.33% cash deposit rate and (2) the Trade Court's docket-management decision to consolidate the preliminary injunction hearing with a trial on the merits under Trade Court Rule 65(a)(2). *See* BlueBr2. But there is no longer any possible remedy available to Mid Continent in this appeal in connection with either order.

### A. Mid Continent's challenge to the injunction is moot.

Oman Fasteners still disagrees that the Trade Court's injunction ever inflicted on Mid Continent the kind of concrete injury-in-fact that Article III requires for an appeal. RedBr33–38. But regardless, that injunction indisputably is not harming Mid Continent now—and cannot affect it in the future.

That injunction is "no longer in effect," *Syntex Ophthalmics, Inc. v. Novicky*, 795 F.2d 983, 985 (Fed. Cir. 1986), because by operation of law Oman Fasteners' cash deposits are now governed by the more-recent 7th Administrative Review—not Commerce's decision in the 6th Administrative Review or the Trade Court's injunction of that decision. *See* Dkt. 5 at 14–15.

Mid Continent's theory of injury was that it was harmed by the government being enjoined against *imposing the 154.33% rate*, which purportedly caused contemporaneous "artificial distortion of the market." GreyBr8–10; BlueBr75. The injunction did indeed prohibit the government from implementing the punitive 154.33% rate. But even if this Court dissolved the injunction now, the government still would not (and could not) reinstate the 154.33% rate because another rate has superseded it: the final rate determined in the subsequent 7th Administrative Review. *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.221(b)(7); Dkt. 5 at 14–15. Accordingly, Mid Continent can no longer obtain the relief it sought with this appeal—reinstatement of the original 154.33% rate.

Mid Continent has previously told this Court the same thing. As mentioned above, Mid Continent asked this Court to expedite briefing and argument in this appeal on grounds that the final results of the 7th Administra-

tive Review would supersede the injunction rate and moot its appeal of the injunction "by operation of law." Dkt. 5 at 1–2; *id.* at 15–17 ("[T]he cash deposit rate covering imports from Oman Fasteners will be revised at some point between December 4, 2022 and January 31, 2024. This cash deposit rate will supersede the 1.65 percent rate imposed by the Trade Court, thus *mooting any challenge* to the permanent injunction." (emphasis added)); *id.* at 15 (arguing that the 7th Administrative Review "final results will result in a revised margin that supersedes the margin from the sixth review as the cash deposit rate"). Mid Continent's representations of mootness were unequivocal. And they were correct.

Mid Continent may argue that, even though the ongoing injunction is moot, it is entitled to retroactive relief from this Court for the injunction period in the form of a retroactive collection of cash deposits in an amount corresponding to the 154.33% rate for the applicable period. But that argument would be frivolous. For starters, Mid Continent forfeited such relief by omitting any substantive discussion of it from its brief. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1379 (Fed. Cir. 2019); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 124 (Fed. Cir. 1994). Mid Continent alluded to that

possibility only in passing half-sentences in its introduction (BlueBr2) or conclusion (BlueBr76; GreyBr37) or summary (BlueBr19), and in a half-sentence capping off a section of its reply brief (GreyBr13). The "relief sought" section of Mid Continent's docketing statement said only that it was asking for *reversal of the injunction* "pending final resolution of the merits of the underlying appeal" to the Trade Court—it did not identify a request for imposition of monetary penalties. Dkt. 4 at 1.

More fundamentally, Mid Continent's appellate briefs failed to cite any authority—in a statute, regulation, or case citation—that would authorize this Court to impose a retroactive cash penalty of estimated deposits. And such a relief would be nonsensical at this point because cash deposits are temporary. They are *estimated* duties; *actual* duties get assessed after the relevant administrative review is final, and any overpayment is refunded if there is a difference. Commerce will determine Oman Fasteners' actual anti-dumping duty margin for imports during the time the Trade Court's injunction was in place in the currently pending 8th Administrative Review, and (assuming such a review is requested) the as-yet uninitiated 9th Administrative Review. There is no allegation, or factual basis for alleging, that Oman Fasteners' dumping margin in either of those future reviews will exceed the

1.65% cash deposit rate mandated by the Trade Court's injunction, much less approach the astronomical 154.33% enjoined rate.

In short: Even assuming that Mid Continent ever had standing to bring this appeal, and no matter what this Court might conclude about the Trade Court's injunction, at this point there is no appellate remedy left that Mid Continent can seek concerning that injunction. The injunction thus no longer even arguably gives rise to any genuine case or controversy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–110 (1998) (Article III requires that "the requested relief will redress the alleged injury").

### B.    Mid Continent's challenge to the trial-management order is also moot.

The other order that Mid Continent attempted to appeal here was the Trade Court's discretionary decision to consolidate the preliminary injunction hearing with a trial under the merits under Trade Court Rule 65(a)(2). BlueBr2, BlueBr21–24. That was never proper as an interlocutory appeal because the consolidation decision was a non-final procedural ruling that was appealable, if at all, only after the Trade Court entered a final judgment. RedBr26, RedBr31–33.

Even assuming that the trial-management order *was* appealable at the time, it would have been appealable only so far as it affected the injunction. Mid Continent's only argument in defense of interlocutory appellate jurisdiction over the consolidation order was that it "led to the permanent injunction on appeal." GreyBr4. But the challenge to that injunction is now moot for all the reasons just explained. Mid Continent also complained that the consolidation decision did not allow it enough time to analyze Oman Fasteners' evidence of harm and the other injunction factors. GreyBr4–5. But again, those injunction factors are now irrelevant because the injunction is now irrelevant.

Mid Continent is free to argue (if it can demonstrate injury-in-fact) in its newly filed appeal from the Trade Court's post-remand final judgment that the court should not have issued the remand order based on preliminary injunction briefing. But *that* is the only appeal in which that argument has ever been proper. And that point is especially clear now that Mid Continent's challenge to the Trade Court's injunction has become moot. In *this* appeal, any statement about the wisdom or propriety of the Trade Court's consolidation decision would be a mere advisory opinion.

### C.  The adverse-inference rate is unreviewable in this appeal because the injunction is moot.

Mid Continent has told Oman Fasteners that it believes this appeal is not moot because this Court will supposedly decide the lawfulness of Commerce's original punitive 154.33% rate in this case. That is incorrect. Mid Continent challenged just two orders in this appeal: the injunction and an underlying trial-management order. RedBr2. The lawfulness of the 154.33% punitive rate was relevant only to whether Oman Fasteners sufficiently demonstrated the requisite likelihood of success on the merits for the Trade Court to issue the *injunction.* Because the injunction is moot, any decision here purporting to address the underlying lawfulness of that rate would amount to an advisory opinion beyond this Court's jurisdiction. *See Momenta Pharmaceuticals*, 915 F.3d at 770.

## II.  Mid Continent must seek review in its co-pending appeal of the Trade Court's final determination, rather than maintain duplicative appeals.

Dismissing this appeal would not prejudice Mid Continent. The merger rule permits a party to appeal interlocutory determinations as part of its appeal from a final judgment. *Hendler v. United States*, 952 F.2d 1364, 1368 (Fed. Cir. 1991). To the extent that any of the Trade Court's interlocutory

rulings caused Mid Continent a concrete injury capable of redress by this Court, Mid Continent can seek relief from those rulings in its pending appeal from the final judgment, No. 2024-1350.

On the other hand, denying this motion and declining to dismiss this appeal would reward Mid Continent for its abuse of process. Mid Continent has told Oman Fasteners that, notwithstanding the injunction no longer being in effect, it would like this Court to decide in *this* appeal the lawfulness of the 154.33% punitive rate. But that issue is also at the core of Mid Continent's appeal from the Trade Court's final judgment because that judgment determined the actual duties that will be assessed on imports covered by the 6th Administrative Review. In fact, Mid Continent's docketing statement in that parallel appeal identifies the lawfulness of that rate as an issue it intends to raise there. *Oman Fasteners, LLC v. United States*, No. 2024-1350 (Fed. Cir. Jan. 12, 2024), ECF No. 4 at 2. Thus, Mid Continent's attempt to have this Court consider that same issue through *this* appeal is little more than an attempt to cut in line with a merits appeal more than eight months before this Court obtained jurisdiction over the Trade Court's merits decision, and to circumvent this Court's brief and word limits for individual appeals by submitting two sets of appellate briefs on the same issue.

This Court condemned that kind of split-brief approach in *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, 86 F.4th 902 (Fed. Cir. 2023). The appellant in *Medtronic* asked the Court to decide an issue in one appeal the same way it had asked the Court to do so in another then-pending appeal. *Id.* at 906. That violated Federal Rule of Appellate Procedure 28(a)(6) in a "fundamentally unfair" way because it circumvented word-count limits. *Id.* at 906–907; *see also Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 910 (Fed. Cir. 2014) (warning that even in consolidated cases, "incorporation cannot be used to exceed word count"). The same unfairness would be true here—declining to dismiss the appeal would give Mid Continent 28,000 total words (plus two reply briefs) to challenge the Trade Court's determinations in this case.

Mid Continent's piecemeal proposal also promises practical headaches. The United States opted out of this interlocutory appeal limited to the Trade Court's injunction, but it has more than a month left to decide whether to appeal the final judgment. Fed. R. App. P. 4(a)(1)(B). If the substantive viability of the punitive 154.33% rate is briefed in both appeals, the issue could be scattered across eight separate briefs. Even if the government does not appeal from the Trade Court's final judgment, the issue still could be scattered across six. The Court need not bless that mess. The cleanest

course is also the jurisdictionally required one: Mid Continent must challenge the Trade Court's judgment only in a single set of briefs, covering all issues, in the appeal from the final judgment.

## Conclusion

This Court should dismiss this interlocutory appeal as moot.

Respectfully submitted,

Perkins Coie LLP
by /s/Michael R. Huston

Counsel for Plaintiff-Appellee
Oman Fasteners, LLC

# ADDENDUM

## TABLE OF CONTENTS

| Description | Pages |
|---|---|
| U.S. Dep't of Commerce, *Cash Deposit Instructions for Steel Nails from the Sultanate of Oman* (A-523-808), Message No. 3347411 (Dec. 13, 2023). | Add1–5 |

| | | | |
|---|---|---|---|
| **MESSAGE NO.** | 3347411 | **MESSAGE DATE** | 12/13/2023 |
| **STATUS** | Active | **INACTIVATED DATE** | |
| **TYPE** | CD-Cash Deposit | **FR CITE** | 88 FR 85878 |
| **SUB-TYPE** | ADMIN RVW-Administrative Rvw | **FR DATE** | 12/11/2023 |
| **CATEGORY ACCESS** | AD | **EFFECTIVE DATE** | 12/11/2023 |
| **TYPE** | Public ✓   Non-Public ☐ | **POI/POR DATE** | 07/01/2021 - 06/30/2022 |
| **Notice of lifting of Suspension Date** | | **PERIOD COVERED** | - |

**SHORT CASE NAME**

Steel Nails

**COURT CASE #s**

**REF MESSAGE #s**

**PRINCIPAL CASE #s**

A523808

**3rd Country CASE #s**

**Add1**

**RE:** Cash deposit instructions for steel nails from the Sultanate of Oman (A-523-808)

1.  Commerce has published in the Federal Register (88 FR 85878) on 12/11/2023 the final results of its administrative review of certain producers and/or exporters subject to the antidumping duty order on steel nails from the Sultanate of Oman (Oman) for the period 07/01/2021 through 06/30/2022.

2.  As a result of Commerce's review, the cash deposit rates have been revised for certain companies. Therefore, for shipments of steel nails from Oman produced and/or exported by the firms listed below, entered, or withdrawn from warehouse, for consumption on or after 12/11/2023, the required cash deposit has been revised:

Oman Fasteners LLC:
Case number: A-523-808-001
Cash deposit rate: 00.00%

Al Kiyumi Global LLC:
Case number: A-523-808-003
Cash deposit rate: 00.00%

Modern Factory For Metal Products:
Case number: A-523-808-004
Cash deposit rate: 00.00%

WWL Indian Private Ltd.:
Case number: A-523-808-005
Cash deposit rate: 00.00%

Al Sarah Building Materials LLC:
Case number: A-523-808-007
Cash deposit rate: 00.00%

CL Synergy (Pvt) Ltd.:
Case number: A-523-808-008
Cash deposit rate: 00.00%

Gulf Steel Manufacturers, LLC:
Case number: A-523-808-009
Cash deposit rate: 00.00%

Omega Global Uluslararasi Tasimacilik Lojistik Ticaret Ltd Sti.:
Case number: A-523-808-010
Cash deposit rate: 00.00%

Al Ansari Teqmark, LLC

**Add3**

Case number: A-523-808-013
Cash deposit rate: 00.00%

Astrotech Steels Private Limited
Case number: A-523-808-014
Cash deposit rate: 00.00%

Buraimi Iron & Steel, LLC
Case number: A-523-808-015
Cash deposit rate: 00.00%

Diamond Foil Trading LLC
Case number: A-523-808-016
Cash deposit rate: 00.00%

Geekay Steel Private Limited
Case number: A-523-808-017
Cash deposit rate: 00.00%

Gulf Nails Manufacturing, LLC
Case number: A-523-808-018
Cash deposit rate: 00.00%

Muscat Industrial Company, LLC
Case number: A-523-808-019
Cash deposit rate: 00.00%

Muscat Nails Factory Golden Asset Trade, LLC
Case number: A-523-808-020
Cash deposit rate: 00.00%

Trinity Steel Pvt. Ltd.
Case number: A-523-808-021
Cash deposit rate: 00.00%

3. If any entries of merchandise are exported by a firm other than the producer, then the following instructions apply:

A. If the exporter of the subject merchandise has its own rate, use the exporter's rate to determine the cash deposit rate.

B. If the exporter of the subject merchandise does not have its own rate but the producer has its own

**Add4**

rate, the cash deposit rate will be the producer's rate.

C.  Where neither the exporter nor the producer currently has its own rate or the producer is unknown, use the all-others rate for establishing the cash deposit rate.

4.  For all producers/exporters of steel nails from Oman without their own rate, the cash deposit rate is 9.10 percent.

5.  These cash deposit requirements shall remain in effect until further notice.  Do not liquidate any entries of merchandise covered by the administrative review until specific liquidation instructions are issued.

6.  If there are any questions by the importing public regarding this message, please contact the Call Center for the Office of AD/CVD Operations, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce at (202) 482-0984.  CBP ports should submit their inquiries through authorized CBP channels only.  (This message was generated by OIV:DP.)

7.  There are no restrictions on the release of this information.

Alexander Amdur

### CERTIFICATE OF COMPLIANCE

1.     This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2). The brief contains 5,059 words, excluding the portions exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f) and Federal Circuit Rule 32(b)(2).

2.     This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Valkyrie A type.

Dated: January 29, 2024                    /s/ Michael R. Huston
                                                          Michael R. Huston