2023–1661

---

in the

**United States Court of Appeals for the Federal Circuit**

---

Oman Fasteners, LLC,

*Plaintiff-Appellee*

v.

United States,

*Defendant*

Mid Continent Steel & Wire, Inc.,

*Defendant-Appellant*

---

Appeal from the United States Court of International Trade
in No. 22-00348, Judge M. Miller Baker

---

**Appellee's Reply in Support of Motion to Dismiss**

---

Michael R. Huston
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

Andrew T. Dufresne
Sopen Shah
Perkins Coie LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703

Michael P. House
Andrew Caridas
Jonathan I. Tietz
Perkins Coie LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
(202) 654–1736
MHouse@perkinscoie.com

Attorneys for Plaintiff-Appellee

February 15, 2024

## Table of Contents

Table of Authorities ................................................................................................. ii

Table of Abbreviations and Conventions ....................................................... iv

Introduction ............................................................................................................. 1

Argument .................................................................................................................. 2

    A.  Mid Continent does not dispute that the injunction now lacks any continuing effect and inflicts no ongoing injury on it. ........................................................................... 2

    B.  Mid Continent did not preserve a request for retroactive relief and identifies no authority for such a remedy. ............................................................................ 8

    C.  Mid Continent's other arguments are also meritless. ................... 11

Conclusion ............................................................................................................. 13

## Table of Authorities

**Cases**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Pages**

*ABS Global, Inc. v. Cytonome/ST, LLC,*
　984 F.3d 1017 (Fed. Cir. 2021) ................................................................... 4

*Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics, LLC,*
　85 F.4th 1377 (Fed. Cir. 2023) ................................................................... 10

*Anton/Bauer, Inc. v. Pana-Tek, Inc.,*
　No. 99-1496, 1999 WL 970179 (Fed. Cir. Oct. 4, 1999) ............................... 5

*Arizonans for Official English v. Arizona,*
　520 U.S. 43 (1997) ....................................................................................... 9

*Home Prods. Int'l v. United States,*
　846 F. App'x 890 (Fed. Cir. 2021) ............................................................... 9

*Oman Fasteners, LLC v. United States,*
　No. 22-00348, 2024 WL 163368 (Ct. Int'l Trade Jan. 5, 2024) ................... 6

*PETA, Inc. v. Gittens,*
　396 F.3d 416 (D.C. Cir. 2005) ..................................................................... 8

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
　918 F.3d 1355 (Fed. Cir. 2019) ................................................................... 9

*Spirit of the Sage Council v. Norton,*
　411 F.3d 225 (D.C. Cir. 2005) ..................................................................... 7

*Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.,*
　856 F.2d 173 (Fed. Cir. 1988) ..................................................................... 5

*Syntex Ophthalmics, Inc. v. Novicky,*
　795 F.2d 983 (Fed. Cir. 1986) ................................................................. 7, 8

*Syntex Ophthalmics, Inc. v. Novicky,*
　No. 80 C 6257, 1985 WL 2433 (N.D. Ill. Sept. 4, 1985) .............................. 8

*Tesco Corp. v. Nat'l Oilwell Varco, L.P.*,
    804 F.3d 1367 (Fed. Cir. 2015).......................................................................5

**Constitution, Statutes, and Regulations**                                    **Pages**

28 U.S.C. § 1292(c)(1) ................................................................................... 4

### TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| AFA | adverse facts available |
| Appx__ | joint appendix page __ |
| BlueBr__ | Mid Continent's opening brief page __ |
| Commerce | U.S. Department of Commerce |
| Customs | U.S. Customs & Border Protection |
| Dkt. __ | docket item __ on appeal |
| GreyBr__ | Mid Continent's reply brief page __ |
| Mid Continent | defendant-appellant Mid Continent Steel & Wire, Inc. |
| Motion | Oman Fasteners' motion to dismiss appeal as moot, Dkt. 48 |
| Oman Fasteners | plaintiff-appellee Oman Fasteners, LLC |
| RedBr__ | Oman Fasteners' response brief page __ |
| Trade Court | United States Court of International Trade |

### INTRODUCTION

Mid Continent's response confirms that its appeal is moot. Mid Continent makes no meaningful argument that the appealed-from *injunction* has any ongoing impact on it (or any other party). Instead, it focuses on a still-disputed *legal issue* addressed in the associated remand opinion. But appellate jurisdiction over this interlocutory appeal was premised solely on the Trade Court's injunction, and Mid Continent's challenge to that injunction has become moot because it does not identify any relief that this Court can provide to it in connection with that injunction.

Mid Continent offers no reason for departing from its earlier representations, made in multiple filings before this Court, that the new cash deposit rate would moot "any challenge" to the injunction "by operation of law." In a footnote (at 5 n.2), Mid Continent submits only that "[u]pon further reflection," it "no longer believes" the new rate moots its interlocutory appeal. Even aside from that unexplained and abrupt about-face, what Mid Continent chooses *not* to dispute proves that this appeal is moot. It does not dispute that the injunction has no ongoing impact and that vacating it would not affect Oman Fasteners' cash deposit rate or otherwise affect Mid Continent in any way. It does not dispute that the injury articulated in its merits

briefs is no longer occurring. It does not dispute that its briefs contained no developed request for the "retroactive" relief mentioned briefly in its opposition to the motion to dismiss. And it does not dispute that dismissing this appeal would create no prejudice because it can properly raise its central legal argument—what Mid Continent calls "the AFA issue"—in its now-pending appeal from the Trade Court's final judgment.

The Court should therefore dismiss this interlocutory appeal as moot.

## ARGUMENT

### A. Mid Continent does not dispute that the injunction now lacks any continuing effect and inflicts no ongoing injury on it.

Mid Continent gives no legitimate reason for reversing its prior assertions that the new cash deposit rate would moot this appeal "by operation of law." Dkt. 5 at 2; *see generally* Dkt. 48 ("Motion") at 17–18. It said so in its motion to expedite briefing. Dkt. 5 at 1–2, 14–17. It said so in its merits briefing. GreyBr37. And it said so without equivocation: the question was *when*, not *whether*, mootness would come. Dkt. 5 at 16 (arguing that the subsequent cash deposit rate "*will* supersede" the injunction rate, "thus mooting *any challenge* to the permanent injunction" (emphases added)).

Mid Continent does not say why it takes the opposite position now, beyond dismissing its earlier representations as an "inaptly-phrased suggestion" (at 16) and a "good faith belief at the time" (at 4–5). Having failed to identify any good-faith basis for its stark change in its position, Mid Continent should be held to its prior representations.

Regardless, Mid Continent does not dispute that the Trade Court's injunction has no continuing impact on any party. Oman Fasteners' current cash deposit rate is 0.0%. If this Court were to vacate or reverse the injunction, the cash deposit rate would remain 0.0%. The same would be true if this Court affirmed the injunction. Mid Continent disputes none of that. The injunction simply does not matter anymore because it was entered to govern a particular administrative review period and it has been superseded by Commerce's decision in the next review period.

Mid Continent nonetheless argues (at 8–12) that a live case or controversy persists because the Trade Court has not formally dissolved the injunction. But that misses the point. The question is not whether the injunction remains on the books but whether it continues to cause any concrete injury to Mid Continent, as Article III requires. There is no longer any redressable injury, as there is no relief available to Mid Continent through this appeal—

the cash deposit rate will remain 0.0% regardless. Under Article III, what matters is whether a concrete *injury* is ongoing, *see ABS Global, Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1024 (Fed. Cir. 2021), not whether an injunction *order* that no longer causes any injury has formally been lifted.[1]

Mid Continent argues that this Court should maintain this appeal anyway to review the legality of Commerce's original, punitive 154.33% deposit rate because the Trade Court rejected that rate in its remand order. But when Mid Continent filed this appeal, *that* substantive ruling remained non-final pending Commerce's remand redetermination and the Trade Court's ruling on Commerce's remand redetermination. The injunction was the only aspect of the Trade Court's order that provided jurisdiction for this interlocutory appeal. 28 U.S.C. § 1292(c)(1); see Appx40–41 ¶¶ 4–5; Dkt. 5 at 20; BlueBr1–2, BlueBr76. That *injunction* is now moot, whether or not any other legal issues addressed in the Trade Court's remand opinion remain subject to dispute. In short, Mid Continent "face[s] a redressability problem"

---

[1] To be clear, Oman Fasteners' position continues to be that the injunction never caused any Article III harm to Mid Continent. But even assuming that Mid Continent ever had standing to challenge the injunction, there certainly is no redressable injury *now*.

- 4 -

for purposes of this interlocutory appeal. *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367, 1377 (Fed. Cir. 2015).

Mid Continent also contends (at 11) that the "parties have thoroughly briefed" the 154.33% rate issue. That might affect convenience, but it is immaterial to jurisdiction. But even on convenience, the argument is dubious. The issue was hardly the "very heart" of the briefing as Mid Continent suggests (at 11)—it was missing from Mid Continent's issue statement and appeared only in the discussion of the public-interest injunction factor. And it is no answer that the 154.33% rate issue is relevant elsewhere, as Mid Continent suggests, because the presence of a disputed *issue* does not confer jurisdiction if the appealed-from *injunction* is moot. *See, e.g., Anton/Bauer, Inc. v. Pana-Tek, Inc.*, No. 99-1496, 1999 WL 970179, at *1 (Fed. Cir. Oct. 4, 1999) (dismissing as moot where the asserted patent had expired and injunction on appeal was "no longer in effect"; related issues that would affect sanctions ruling were appropriate for separate appeal "after entry of final judgment"); *see also Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 856 F.2d 173, 176 (Fed. Cir. 1988) (concluding that this Court could not review a particular issue "except in connection with review of the order" it appeared in, and that the order itself was not properly on appeal).

Mid Continent also incorrectly suggests (at 9) that the Trade Court "acknowledged" that this interlocutory appeal presents the 154.33% rate issue as a live controversy before this Court. All the Trade Court said was that it did not have jurisdiction to reconsider Mid Continent's arguments defending the original 154.33% rate—which it had already "rejected"—while an appeal was "pending" in which Mid Continent had asserted that issue. *Oman Fasteners, LLC v. United States*, No. 22-348, 2024 WL 163368, at *2 n.1 (Ct. Int'l Trade Jan. 5, 2024). The Trade Court's reticence is irrelevant to whether the interlocutory appeal is moot because mootness is about the effects of the injunction and this Court's (in)ability to provide relief, not about the underlying legal issues. But the Trade Court understandably did not want to rule on this Court's jurisdiction.

Any fault in Mid Continent's inability to get a ruling on its request for reconsideration from the Trade Court lies with Mid Continent alone, which could have dismissed this appeal as soon as it was mooted by Commerce's cash deposit instructions in the seventh administrative review and thereby freed the Trade Court from any perceived jurisdictional conflict. Besides, the Trade Court thoroughly and decisively rejected all of Mid Continent's arguments in its remand opinion; there is no reasonable prospect that the Trade

Court would have changed its view based on Mid Continent's remand objections, which merely reiterated the same arguments the Trade Court had previously found unpersuasive.

Mid Continent's attempt (at 9–11) to distinguish *Syntex Ophthalmics, Inc. v. Novicky*, 795 F.2d 983 (Fed. Cir. 1986), misses the central point. Mid Continent argues that the *Syntex* injunction ended after a fixed date, while this one was styled to continue "until further order of the court." But that amounts at most to a difference in *why* the injunction is no longer operable. As Mid Continent previously pointed out, the Trade Court's injunction would become inoperable once Commerce issued new cash deposit instructions, as has now occurred. Mid Continent also suggests (at 10–11) that the *Syntex* court saw no "current or future consequences which could keep alive any controversy," but the same is true here, as Oman Fasteners already explained: vacating the injunction would have no "consequences" for Mid Continent (or any other party) because the cash deposit rate now in force no longer depends on the injunction. At bottom, "nothing remains to be enjoined." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229 (D.C. Cir. 2005) (citation omitted) (appeal of injunction against government's application of "No Surprises" rule was moot where rule had since been replaced by an-

other); *see also PETA, Inc. v. Gittens*, 396 F.3d 416, 419, 421 (D.C. Cir. 2005) (appeal of injunction requiring government to allow exhibit to be displayed was moot where exhibit had since come and gone).[2]

### B. Mid Continent did not preserve a request for retroactive relief and identifies no authority for such a remedy.

Because the injunction indisputably has no ongoing effect, Mid Continent's effort to maintain its interlocutory appeal hinges on an undeveloped request for this Court to craft a new, retroactive monetary remedy. In two sentences free of any citation, Mid Continent insists (at 13) that reversing the injunction "obvious[ly]" would entail "retroactive collection of cash deposits on relevant entries." This Court should not take that bare suggestion seriously.

---

[2] Mid Continent also remarks (at 9–10) that *Syntex* did not involve a "permanent injunction." That does not matter because justiciability depends on whether there is an ongoing injury, not how the injunction is styled. But Mid Continent also misdescribes that case. That case involved a "permanent injunction" because it was entered after, not before, final judgment on the relevant claim. *Syntex*, 795 F.2d at 984–986 & n.6; *Syntex Ophthalmics, Inc. v. Novicky*, No. 80 C 6257, 1985 WL 2433, *1, *3 (N.D. Ill. Sept. 4, 1985) (discussing "final injunction"). That injunction had conditions that made it expire, like the injunction in this case (there, the passage of time; here, the arrival of a superseding cash deposit rate).

As Oman Fasteners already explained (Motion at 18–20), Mid Continent never developed that argument or provided any authority for such unprecedented relief in its briefs. Mid Continent has no response to Oman Fasteners' forfeiture argument or to the cases that Oman Fasteners cited. It has thus conceded the point.

Instead, Mid Continent now purports—for the first time—to justify its request for this Court to retroactively order back-collection of cash deposits at 154.33%. But Mid Continent simply says it would be "obvious" to do that. It is not obvious at all, and that argument is not enough. *See Home Prods. Int'l v. United States*, 846 F. App'x 890, 893 (Fed. Cir. 2021) ("bald statement" that Trade Court "certainly" abused its discretion was insufficient). Mid Continent presumes an unprecedented (and illogical) form of relief without identifying any authority—no statute, regulation, or judicial decision—that would provide a basis to order "retroactive" collection of cash deposits.

A party must "persuasively identif[y] a legal basis for [its] request" for relief. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1368 n.4 (Fed. Cir. 2019). And a request for relief without basis in law cannot save a claim from mootness. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68–69 (1997) (dismissing as moot where "claim for relief" in-

voked "to overcome mootness was nonexistent"). To that end, "general and nonspecific allegations" that this Court can order relief that would redress an injury are not enough to satisfy Article III. *Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics, LLC*, 85 F.4th 1377, 1382 (Fed. Cir. 2023). In *Allgenesis*, this Court dismissed for lack of jurisdiction because—as here—the appellant's argument for how this Court could remedy an alleged injury was "limited to a single paragraph containing only vague allegations." *Id.*

Mid Continent's suggestion is also bereft of logic: cash deposits serve as an *estimate* of antidumping duties that will be definitively determined in a subsequent administrative review. Commerce has now *completed* one subsequent administrative review (the seventh) and found Oman Fasteners' actual dumping margin to be 0.0%, and there is no allegation that Oman Fasteners is not fully cooperating with Commerce's pending administrative review (the eighth).[3] Yet Mid Continent somehow believes that Commerce would nevertheless attempt to retroactively *estimate* Oman Fasteners' antidumping duties not at the most recent, data-driven, 0.0% rate but instead on

---

[3] The eighth review will definitively determine Oman Fasteners' dumping margin for the first five months covered by the injunction.

an outdated and discredited 154.33% adverse inference rate that the United States is no longer defending. *See* Dkt. 50 at 2, 4.

### C. Mid Continent's other arguments are also meritless.

1. Mid Continent argues (at 15–16) that Oman Fasteners' motion to dismiss constitutes improper supplemental briefing on the Article III standing issues presented in its merits brief. That argument is baseless. Oman Fasteners' present motion does not seek dismissal on the same finality and standing grounds raised in its merits brief. *See* RedBr30–38. With *this* motion, Oman Fasteners instead asks this Court to dismiss for *mootness*, on grounds that arose only after merits briefing was completed. Whether or not Mid Continent's interlocutory appeal was ever justiciable (it wasn't), it is clearly moot now. Motion at 25.

2. Shortly after Oman Fasteners moved to dismiss, Mid Continent for the first time proposed consolidating this appeal with its later-filed appeal from the Trade Court's final judgment and skipping briefing in the second appeal entirely. *Oman Fasteners, LLC v. United States*, No. 24-1350 (Fed. Cir. Jan. 29, 2024), ECF No. 11. In that motion, Mid Continent waived its challenges to any other issue other than the 154.33% rate issue. *See id.* at 11 (urging this Court to forgo briefing in appeal No. 24-1350 entirely).

Before filing that motion in No. 24-1350, Mid Continent had proposed to Oman Fasteners only that the parties ask to *stay* the second appeal pending the outcome in this one—it had not suggested that this Court should skip briefing in the second appeal *regardless of* the outcome. Indeed, it included the 154.33% rate issue in its docketing statement in No. 24-1350, broadcasting its intent to brief it there. *Oman Fasteners*, No. 24-1350 (Fed. Cir. Jan. 29, 2024), ECF No. 4. Mid Continent's accusations against Oman Fasteners (at 14) are therefore unfair and incorrect.

As Oman Fasteners explained, Mid Continent's new procedural proposal to simply borrow another case's briefing on other issues would make things more complicated, not less. *See Oman Fasteners*, No. 24-1350 (Fed. Cir. Feb. 8, 2024), ECF No. 13 at 8–11. A large proportion of the briefing in this appeal simply does not matter anymore, making it inefficient at best to use that briefing to review the Trade Court's later final judgment. *Id.* at 9–10. More fundamentally, convenience is irrelevant to justiciability. This Court should take the simplest and jurisdictionally required course and dismiss this interlocutory appeal so that Mid Continent can get on with briefing its other appeal—the only jurisdictionally proper one.

**Conclusion**

This Court should dismiss this interlocutory appeal as moot.

Respectfully submitted,

Perkins Coie LLP

by /s/Michael R. Huston

Counsel for Plaintiff-Appellee
Oman Fasteners, LLC

## Certificate of Compliance

1.     This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2). The brief contains 2,598 words, excluding the portions exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f) and Federal Circuit Rule 32(b)(2).

2.     This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Valkyrie A type.

Dated: February 15, 2024                              /s/Michael R. Huston
                                                                            Michael R. Huston