**PERKINSCOie**

2525 East Camelback Road
Suite 500
Phoenix, Arizona 85016

T +1.602.351.8000
F +1.602.648.7000
PerkinsCoie.com

June 10, 2024

Michael R. Huston
MHuston@perkinscoie.com
D. +1.202.434.1630
F. +1.602.648.7000

**VIA CM/ECF**

Jarrett B. Perlow, Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

**Re:** *Oman Fasteners, LLC v. United States*, No. 23-1661
Notice of supplemental authority under Fed. R. App. P. 28(j)

Dear Mr. Perlow:

The recent decision of the Court of International Trade in *Cambria Co. v. Antique Marbonite Pvt. Ltd.*, No. 23-cv-7, 2024 WL 2722558 (May 28, 2024), provides additional supporting authority for Oman Fasteners' arguments in this appeal. The Trade Court in *Cambria* recognized that it is an abuse of discretion for Commerce to react to a respondent's non-prejudicially missing a single deadline by deeming that respondent uncooperative and applying a punitive adverse-inference antidumping rate. *Cf.* RedBr63–68.

The *Cambria* respondent filed one response five hours late. 2024 WL 2722558, at *3. Because that respondent did not show "extraordinary circumstances," Commerce rejected the filing, denied an extension, and assigned a total adverse-inference rate that was the highest one in the petition. *Id.* at *3. On review, the Trade Court determined that Commerce abused its discretion, and in doing so the court rejected some of the same arguments made by Mid Continent in this appeal.

*Cambria* reiterated that Commerce "must" waive its "extraordinary circumstances" standard if "failure to do so would amount to an abuse of discretion." *Id.* at *5. Applying the deadline strictly without an extension was

June 10, 2024
Page 2

unreasonable because the late submission was "inadvertent" and well before the Preliminary Results in that investigation (i.e., the late filing was non-prejudicial). *Id.* at *5. *Cambria* distinguished *Dongtai Peak* (invoked by Mid Continent here) in the same way as the Trade Court in this case, *id.* at *6 n.13; *see* RedBr65–66, and confirmed that Commerce does not have unfettered discretion absent a "pattern of non-cooperation," 2024 WL 2722558, at *5 n.10 (distinguishing *Bebitz Flanges*).

The Trade Court further confirmed that a "single late response is not substantial evidence that a respondent has not acted to the 'best of its ability' to cooperate." *Id.* at *6–7 (citing *Nippon Steel*); *cf.* RedBr10, 59–60. Like here, the respondent in *Cambria* had consistently complied with prior deadlines. One inadvertent missed deadline "without more" did not support applying an adverse inference there, 2024 WL 2722558, at *7, nor here, RedBr59–60, 64–66.

*Cambria* confirms that this Court should affirm the Trade Court in this appeal.

Respectfully submitted,

*/s/Michael R. Huston*
Michael R. Huston

*Counsel for Oman Fasteners, LLC*

cc: All counsel of record via CM/ECF

Attachment

Words: 349

2024 WL 2722558
Only the Westlaw citation
is currently available.
United States Court of International Trade.

CAMBRIA COMPANY LLC, Plaintiff,
and
Antique Marbonite Private Limited;
Prism Johnson Limited; Shivam Enterprises; Arizona Tile, LLC;
M S International, Inc.; and PNS Clearance LLC, Consolidated-Plaintiffs,
v.
UNITED STATES, Defendant,
and
APB Trading, LLC; Arizona Tile LLC; Cosmos Granite (South East) LLC; Cosmos Granite (South West) LLC; Cosmos Granite (West) LLC; Curava Corporation; Divyashakti Granites Limited; Divyashakti Limited; Federation of Indian Quartz Surface Industry; M S International, Inc.; Marudhar Rocks International Pvt Ltd.; Overseas Manufacturing and Supply Inc.; Quartzkraft LLP; and Stratus Surfaces LLC, Defendant-Intervenors.

Slip Op. 24-62
|
Consol. Court No. 23-00007
|
May 28, 2024

**Attorneys and Law Firms**

Luke A. Meisner, Schagrin Associates, of Washington DC, argued for Plaintiff Cambria Company LLC. Also on the brief was Roger B. Schagrin.

Jonathan T. Stoel and Jared Wessel, Hogan Lovells US LLP, of Washington, DC, argued for Consolidated Plaintiffs Arizona Title, LLC, M S International, Inc., and PNS Clearance LLC. Also on the brief were Nicholas R. Sparks and Cayla D. Ebert.

Sezi Erdin, Trade Pacific PLLC, of Washington, DC, argued for Consolidated Plaintiffs Antique Marbonite Private Limited, Prism Johnson Limited, and Shivam Enterprises. Also on the brief were Robert G. Gosselink and Aqmar Rahman.

Collin T. Mathias, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. Also on the brief were Joshua E. Kurland, Senior Trial Counsel, Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief were Vania Wang, Senior Attorney, and Joseph Grossman, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

R. Will Planert, Julie C. Mendoza, Donald B. Cameron, Brady W. Mills, Mary S. Hodgins, Eugene Degnan, Jordan L. Fleischer, Nicholas C. Duffey, and Ryan R. Migeed, Morris Manning & Martin LLP, of Washington, DC, for Defendant-Intervenor Federation of Indian Quartz Surface Industry.

David John Craven, Craven Trade Law LLC, of Chicago, IL, for Defendant-Intervenor APB Trading, LLC, et al.

Case: 23-1661 Document: 53 Page: 4 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

Before: Mark A. Barnett, Chief Judge

## OPINION AND ORDER

Mark A. Barnett, Chief Judge

**\*1** This consolidated action is before the court following the filing of motions for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2 challenging the final results of the U.S. Department of Commerce's ("Commerce" or "the agency") first administrative review of the antidumping duty order covering quartz surface products from India for the period of review ("POR") December 13, 2019, through May 31, 2021. *See Certain Quartz Surface Prods. From India*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) (final results of antidumping duty admin. rev.; 2019–2021) ("*Final Results*"), ECF No. 41-4, and accompanying Issues and Decision Mem., A-533-889 (Dec. 30, 2022) ("I&D Mem."), ECF No. 41-5.[1]

[1] The amended administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 47-3, and a Confidential Administrative Record ("CR"), ECF No. 47-2. Parties submitted joint appendices containing record documents cited in their briefs. *See* Confid. J.A. ("CJA"), ECF No. 88; Public J.A., ECF No. 89. The court references the confidential version of the relevant record documents, unless otherwise specified.

**\*2** Parties present three sets of challenges to the *Final Results*, listed in the order in which they are addressed. First, Consolidated Plaintiffs Antique Marbonite Private Limited, Prism Johnson Limited, and Shivam Enterprises (collectively, "Antique Group"), foreign producers and exporters of subject merchandise and mandatory respondents in the administrative proceeding, challenge Commerce's rejection of its second supplemental questionnaire response and denial of subsequent requests for permission to refile that response. *See* Mem. in Supp of the Mot. of [Antique Grp.] for J. on the Agency R. ("Antique Grp.'s Mem."), ECF No. 52; Reply Br. of [Antique Grp.], ECF No. 83. Second, Consolidated Plaintiffs Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC (collectively, "Arizona Tile"), U.S. importers of subject merchandise, challenge Commerce's rejection of Antique Group's second supplemental questionnaire response, the agency's application of total adverse facts available ("AFA") to Antique Group and the resulting antidumping duty rate, and Commerce's decision not to apply an export subsidy offset to the rate assigned to Indian exporters not selected for individual review. *See* Confid. Mem. of P. & A. in Supp. of Rule 56.2 Mot. for J. on the Agency R. of Consol. Pls. [Arizona Tile] ("Arizona Tile's Mem."), ECF No. 53; Confid. Reply of Consol. Pls. [Arizona Tile], ECF No. 86. Third, Plaintiff Cambria Company LLC ("Cambria"), a domestic producer of subject merchandise, challenges Commerce's decision to assign the all-others rate from the original investigation to the non-selected respondents in the administrative review. *See* Confid. Pl.'s Mem. in Supp. of its Mot. for J. on the Agency

Case: 23-1661 Document: 53 Page: 5 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

R. ("Cambria's Mem."), ECF No. 55; Confid. Pl.'s Reply Br. in Supp. of its Mot. for J. on the Agency R., ECF No. 84.

Defendant United States ("the Government") defends the *Final Results*. *See* Confid. Def.'s Resp. to Pls.' Mots. for J. upon the Agency R. ("Def.'s Resp."), ECF No. 67. Cambria, appearing as a defendant-intervenor in the member actions, filed a response to both Antique Group and Arizona Tile's motions. *See* Cambria Co.'s Resp. to Consol. Pls.' Mot. for J. on the Agency R. ("Cambria's Resp."), ECF No. 73. In their respective positions as defendant-intervenors in the lead case, Arizona Tile and the Federation of Indian Quartz Surface Industry ("Federation"), an association of Indian producers and exporters of subject merchandise, each filed a response to Cambria's motion. *See* Confid. Def.-Ints.' [Arizona Tile's] Resp. to Pl.'s Mot. for J. upon the Agency R. ("Arizona Tile's Resp."), ECF No. 74; Def.-Int.'s Resp. to Pl.'s Mot. for J. on the Agency R. ("Federation's Resp."), ECF No. 72.[2]

2     ABP Trading, LLC, *et al.*, appeared as a defendant-intervenor in the lead action but did not file substantive briefs.

## BACKGROUND

In June 2020, Commerce issued an order imposing antidumping duties on certain quartz surface products from India. *See Certain Quartz Surface Prods. From India and Turkey*, 85 Fed. Reg. 37,422 (Dep't Commerce June 22, 2020) (antidumping duty orders) ("*Order*"). In August 2021, Commerce initiated the first administrative review of that order. *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 86 Fed. Reg. 41,821, 41,823 (Dep't Commerce Aug. 3, 2021), PR 22, CJA Tab 3. Commerce initially selected Antique Group[3] and Pokarna Engineered Stone Limited ("Pokarna") as mandatory respondents. *See* Resp't Selection (Sept. 28, 2021) ("Resp't Selection Mem.") at 1, PR 53, CR 13, CJA Tab 8. Antique Group timely responded to Commerce's initial and first supplemental questionnaires. *See* Submission of Section-A Initial Questionnaire Resp. (Nov. 3, 2021), PR 79–87, CR 21–35, CJA Tab 13; Submission of Section-B Initial Questionnaire Resp. (Dec. 9, 2021), PR 95, CR 36–41, CJA Tab 14; Submission of Section-C Initial Questionnaire Resp. (Dec. 9, 2021), PR 96, CR 42–54, CJA Tab 15[4]; Submission of Section-D Initial Questionnaire Resp. (Dec. 9, 2021), PR 97, CR 55–62, CJA Tab 17; Submission of Resp. to First Suppl. Questionnaire (Section A and B) (Apr. 15, 2022), PR 189–92, CR 206–15, CJA Tab 23. On April 20, 2022, Commerce issued Antique Group a second supplemental questionnaire. Second Suppl. Questionnaire (Apr. 20, 2022), PR 197, CR 216, CJA Tab 24.

3     As stated above, Antique Group consists of three parties, but Commerce found those three parties constituted a single entity. I&D Mem. at 1 n.2.

4     This document was later refiled, within the provided timelines, for business proprietary treatment. *See* Filing of Corrected Version of Submission of Section-C Initial Questionnaire Resp. (Dec. 23, 2021), CR 180–92, CJA Tab 16.

Case: 23-1661　　Document: 53　　Page: 6　　Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

On April 30, 2022, Antique Group requested an extension of time to file its second supplemental questionnaire response; Commerce granted that extension in part, setting a deadline of May 11, 2022, at 5 p.m. *See* Extension Req. to Submit Resp. to Second Suppl. Questionnaire (Section A, C and D) (Apr. 30, 2022), PR 198, CJA Tab 25; First Extension of Time for Antique Grp.'s Second Suppl. Questionnaire Resp. (May 2, 2022), PR 199, CJA Tab 26. On May 7, 2022, Antique Group requested a second extension of time, which Commerce granted in part, setting a deadline of May 16, 2022, this time at 10 a.m. *See* 2nd Extension Req. to Submit Resp. to Second Suppl. Questionnaire (Section A, C and D) (May 7, 2022), PR 200, CJA Tab 27; Second Extension of Time for Antique Grp.'s Second Suppl. Questionnaire Resp. (May 9, 2022), PR 201, CJA Tab 28. On the due date, May 16, 2022, Antique Group submitted its second supplemental questionnaire response between 2:55 p.m. and 3:45 p.m. *See* Antique Grp.'s Resp. to Commerce's Second Suppl. Questionnaire (May 16, 2022) (Rejected Filing), PR 202, CR 217, CJA Tab 29; Rejection of Second Suppl. Questionnaire Resp. (May 18, 2022) ("Rejection of Second Suppl. Resp.") at 1, PR 203, CJA Tab 30. Two days later, on May 18, 2022, Commerce rejected Antique Group's submission as untimely pursuant to [19 C.F.R. § 351.302(d)](). *See* Rejection of Second Suppl. Resp. at 1–2.

**\*3** Antique Group filed three letters with Commerce requesting the opportunity to refile its second supplemental questionnaire response, citing both its participation in the proceeding and the unusual nature of a 10 a.m. deadline. *See* Req. for Opportunity to Refile Resp. to Second Suppl. Questionnaire (Section A, C and D) (May 19, 2022) ("Req. to Refile Secs. ACD"), PR 205, CJA Tab 32; Req. for Acceptance of 2nd Suppl. Questionnaire Resp. (Sec-ACD) Post Deadline (May 24, 2022), PR 208, CR 218, CJA Tab 35; Req. for Recons. and Req. for Extension to File Out of Time (June 10, 2022), PR 225, CJA Tab 43. Commerce rejected Antique Group's requests, noting that Antique Group did not demonstrate the extraordinary circumstances necessary to grant an untimely extension request. *See* Rejection of Second Suppl. Questionnaire Resp. (May 20, 2022) ("First Denial of Req. to Resubmit"), PR 207, CJA Tab 34; Denial of Second Req. to Resubmit Second Suppl. Questionnaire Resp. (June 3, 2022) ("Second Denial of Req. to Resubmit"), PR 216, CJA Tab 40.

Approximately forty-five days after Antique Group filed its second supplemental questionnaire response (and Commerce's subsequent rejection of that response), Commerce published its preliminary results. *[Certain Quartz Surface Prods. From India](), 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022)* (prelim. results of antidumping duty admin. rev. and partial rescission of antidumping duty admin. rev.; 2019–2021) ("*Prelim. Results*"), PR 248, CJA Tab 48; *see also* Prelim. Decision Mem., A-533-889 (June 30, 2022) ("Prelim. Mem."), PR 243, CJA Tab 46. Therein, Commerce calculated a weighted-average dumping margin of zero percent for Pokarna and preliminarily assigned Antique Group a dumping margin of 323.12 percent based on total AFA.[5] *Prelim. [Results](), 87 Fed. Reg. at 40,787*. The AFA rate assigned to Antique Group was the dumping

Case: 23-1661 Document: 53 Page: 7 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

margin alleged in the petition underlying the original investigation. Prelim. Mem. at 10–11. Commerce also preliminarily established a rate of 161.56 percent for the fifty-one companies not selected for individual examination by averaging the margins of Pokarna and Antique Group. *Prelim. Results*, 87 Fed. Reg. at 40,786; Calculation of the Rate for Resp'ts Not Selected for Individual Examination (June 30, 2022) ("Prelim. Non-Selected Calc. Mem.) at 2, PR 244, CR 229, CJA Tab 47.

5    "The phrase 'total adverse [facts available]' or 'total AFA' encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability, it must use an adverse inference in selecting among the facts otherwise available." *Deacero S.A.P.I. de C.V. v. United States*, 42 CIT ___, ___, 353 F. Supp. 3d 1303, 1305 n.2 (2018).

Commerce published the *Final Results* on January 9, 2023, 88 Fed. Reg. at 1,188, and made no change to the total AFA rate assigned to Antique Group, I&D Mem. at 40. In a change from the *Preliminary Results*, Commerce assigned a rate of 3.19 percent to the non-selected companies based on the non-selected respondent rate from the investigation. *Id.* at 55. Commerce explained that, upon review of "the history of rates for this *Order*," the agency concluded that the non-selected respondent rate assigned in the *Preliminary Results* was "not reasonably reflective of the non-selected companies' potential dumping margins during the POR." *Id.* at 54.

This appeal followed. The court consolidated various challenges to the *Final Results* into this lead case. *See* Order (Mar. 17, 2023), ECF No. 40. The court heard oral argument on March 19, 2024.[6] *See* Docket Entry, ECF No. 98.

6    Subsequent citations to the oral argument include the time stamp from the recording, which is available at https://www.cit.uscourts.gov/sites/cit/files/20240319-23-00007-MAB.mp3.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[7] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence on the record and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is defined as "more than a mere scintilla," as well as evidence that "a reasonable mind might accept as adequate to support a conclusion." *See Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

7    Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition, unless otherwise specified.

Case: 23-1661    Document: 53    Page: 8    Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

## DISCUSSION

## I. Commerce's Rejection of Antique Group's Second Supplemental Questionnaire

### A. Legal Framework

**\*4** Commerce's regulations establish a default standard for the time of day by which a submission must be received on the due date, noting, "[i]n general," that "[a]n electronically filed document must be received successfully in its entirety ... by 5 p.m. Eastern Time on the due date." 19 C.F.R. § 351.303(b)(1). [8] Commerce's regulations permit the agency to extend any deadline upon a showing of good cause. *Id.* § 351.302(b).

[8]  A review of the history of section 351.303(b) shows that Commerce first promulgated the default standard of 5 p.m. in July 2011. *See Antidumping and Countervailing Duty Proceedings*, 76 Fed. Reg. 39,263, 39,275 (Dep't Commerce July 6, 2011) (electronic filing procedures; admin. protective order procedures). Commerce established this standard to create an equivalence between when its records room closed for receiving paper submissions and when electronic filings would be due. *Id.* at 39,264–65. As indicated by the regulation currently in effect, Commerce has not changed the default standard. *See* 19 C.F.R. § 351.303(b) (2023).

Parties may file untimely extension requests, which Commerce may grant provided the moving "party demonstrates that an extraordinary circumstance exists." *Id.* § 351.302(c). An extraordinary circumstance is defined as "an unexpected event" that "[c]ould not have been prevented if reasonable measures had been taken, and ... [p]recludes a party or its representative from timely filing an extension request through all reasonable means." *Id.* § 351.302(c)(2)(i)–(ii). These standards notwithstanding, a deadline-setting regulation that "is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995).

### B. Discussion

Antique Group and Arizona Tile argue that Commerce abused its discretion and acted in an arbitrary and capricious manner in rejecting Antique Group's second supplemental questionnaire response. *See* Antique Grp.'s Mem. at 13–27; Arizona Tile's Mem. at 16–34. The Government and Cambria respond that Commerce properly exercised its discretion in setting a 10 a.m. deadline, and Antique Group did not demonstrate the extraordinary circumstances necessary for Commerce to accept its submission out of time. *See* Def.'s Resp. at 13–30; Cambria's Resp. at 11–20.

Commerce is "free to fashion [its] own rules of procedure and to pursue methods of inquiry capable of permitting [it] to discharge [its] multitudinous duties." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (citation omitted). To that end, "Commerce

Case: 23-1661 Document: 53 Page: 9 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." *Yantai Timken Co. v. United States*, 31 C.I.T. 1741, 1755, 521 F. Supp. 2d 1356, 1370 (2007) (citation omitted). As relevant here, this means that Commerce has discretion to depart from its regulation establishing a default deadline of 5 p.m. to instead set a 10 a.m. deadline.

Commerce, however, must have a reasonable basis for such a departure, particularly when, as here, Commerce's decision to advance the deadline to 10 a.m. resulted in the rejection of Antique Group's submission that, if not for the departure from the 5 p.m. deadline, would have been timely. Therefore, the court considers Commerce's departure in assessing whether its rejection of the submission was reasonable. Upon review of the record, Commerce's decision to reject Antique Group's submission was unreasonable and unsupported by substantial evidence, constituting an abuse of discretion.

**\*5** Regardless of whether the departure from the 5 p.m. deadline is an extraordinary circumstance of Commerce's own making, [9] Commerce "must" waive its extraordinary circumstance standard when "failure to do so would amount to an abuse of discretion." *NTN Bearing*, 74 F.3d at 1207. "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted). In this case, Commerce abused its discretion.

9   Commerce admits the lack of uniformity present here, by noting that departures from the 5 p.m. deadline are "not utilized regularly," I&D Mem. at 17, and that "10 a.m. is not the routine deadline time," Second Denial of Req. to Resubmit at 3.

As discussed above, Antique Group submitted its response five hours after the changed deadline, approximately two hours *before* the standard deadline, and forty-five days before the *Preliminary Results.* No party questions that this untimely submission was inadvertent. *See, e.g.*, Def.'s Resp. at 13 (noting Commerce's finding that an oversight is not an extraordinary circumstance). In declining to accept this late submission, Commerce explained generally that "untimely extension requests hinder the efficient and timely conduct of [the agency's] proceedings," First Denial of Req. to Resubmit at 2, but failed to engage with the specific facts of *this* case, which involved an atypical deadline and a five-hour delay, but otherwise resulted in the submission being received within business hours on the date upon which it was due. [10] Commerce failed to weigh the relevant facts, resulting in a decision that is unreasonable and unsupported by the evidence. See *Consol. Bearings Co.*, 412 F.3d at 1269.

10  The Government and Cambria reference *Bebitz Flanges Works Private Ltd. v. United States*, 44 CIT ––––, 433 F. Supp. 3d 1297 (2020), as an example of this court affirming Commerce's rejection of a response made less

Case: 23-1661 Document: 53 Page: 10 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

than two hours after the deadline. *See* Def.'s Resp. at 27; Cambria's Resp. at 16. *Bebitz Flanges Works* is easily distinguishable because the respondent there demonstrated a pattern of non-cooperation, evidenced by the filing of four extension requests and multiple warnings from Commerce. *See id.* at 1302.

The Government's arguments to the contrary are unpersuasive. At oral argument, the Government averred only that Commerce is free to set its own deadlines pursuant to section 351.302, Commerce's regulation regarding the extension of time limits. Oral Arg. 6:30–8:00. The Government argues that section 351.302 operates independently of section 351.303(b) and provides no limitations on Commerce's ability to set deadlines in granting extension requests. *Id.* 8:00–10:05. These arguments are misplaced.

Section 351.302(b) and section 351.303(b) can, and should, be read together. Section 351.302(b) states that "the Secretary may, for good cause, extend any time limit established by this part," but it does not affect the time of day that submission must be received. Section 351.303(b) provides 5 p.m. as the default time of day even when the agency has extended the due date for a submission. In fact, at oral argument, the Government conceded that when Commerce extends a deadline and fails to provide a specific time of day in its extension, the default time that a party must provide its submission is 5 p.m., as provided by section 351.303(b). Oral Arg. 10:05–10:50. Thus, the Government has failed to justify its position that section 351.302(b) supersedes the default time deadline in section 351.303(b) such that Commerce's departure from the 5 p.m. deadline here was supported by substantial evidence solely by reason of the extension.

**\*6** The Government also avers that "Commerce has set a 10 a.m. deadline more than ten times ... in the first five months of 2022 across various Enforcement and Compliance offices." Def.'s Resp. at 15. However, a mere factual statement by the Government of the number of times Commerce departed from its regulation is insufficient explanation to support Commerce's departure in this case.[11] While Commerce has discretion to depart from its default deadline, the agency failed to explain why it was necessary to depart in this case such that its corresponding rejection of Antique Group's submission was reasonable.[12]

[11] The Government's reference to multiple 10 a.m. deadlines set across Commerce's trade enforcement offices also is not persuasive. Based on the number of orders it administers, Commerce likely sets hundreds or even thousands of deadlines each year, the vast majority of which adhere to the 5 p.m. deadline prescribed in section 351.303(b). Thus, the limited use of a 10 a.m. deadline is insufficient to justify such a deadline here.

[12] In fact, the Government offered no reason for Commerce to have adopted a 10 a.m. deadline in this instance. Commerce might well be within its discretion to enforce strictly a 10 a.m. deadline if, for example, it established that agency officials needed the requested information for

Case: 23-1661 Document: 53 Page: 11 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

verification and were expecting to depart later that day to commence the verification.

In reaching this conclusion, the court declines to consider the parties' contentions regarding *Oman Fasteners, LLC v. United States*, Slip Op. 23-17, 2023 WL 2233642 (CIT Feb. 15, 2023), and Commerce's alleged practice of permitting untimely submissions discussed therein. That case is currently on appeal and is not dispositive as to whether Commerce reasonably rejected Antique Group's submission in this case. [13]

[13] The Government and Cambria also rely upon *Dongtai Peak Honey Industry Co. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015), to support the notion that agencies should be free to fashion their own rules of procedure. *See* Def.'s Resp. at 23; Cambria's Resp. at 12. Therein, a respondent received warnings from Commerce in response to extension requests filed six minutes before the submission deadline. *See Dongtai Peak*, 777 F.3d at 1346–47. Rather than heed Commerce's warnings, later in that proceeding the respondent failed to submit a supplemental questionnaire response within Commerce's stated deadline, and instead filed an untimely extension request two days after the deadline. *Id.* at 1347. The facts of this case distinguish it from *Dongtai Peak.*

In sum, Commerce abused its discretion by rejecting Antique Group's second supplemental questionnaire response. On remand, Commerce must accept and consider the information contained within that submission.

## II. Commerce's Application of AFA to Antique Group

The court's conclusion that Commerce abused its discretion in rejecting Antique Group's submission necessarily impugns the agency's basis for finding that Antique Group failed to act to the best of its ability and thus its decision to rely on the application of total adverse facts available. Even if the court had sustained Commerce's rejection of the submission, the court would—and does—nevertheless find that Commerce's determination that Antique Group failed to act to the best of its ability lacks substantial evidence.

### A. Legal Background

When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce, "fails to provide" requested information by the submission deadline, "significantly impedes a proceeding," or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall ... use the facts otherwise available." 19 U.S.C. § 1677e(a). Once Commerce determines that the use of facts otherwise available is warranted, if Commerce also "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b). "Compliance with the 'best of its ability' standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete

Case: 23-1661　　Document: 53　　Page: 12　　Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

### B. Discussion

*7 Antique Group argues that Commerce construed "best of its ability" to mean perfection, as evidenced by the application of total AFA in response to what Antique Group characterizes as an inadvertent calendaring error. Antique Grp.'s Mem. at 28–30. In response, the Government argues that the application of AFA is justified because Antique Group did not act to the best of its ability in timely responding to Commerce's second supplemental questionnaire, which the agency needed to calculate an accurate dumping margin. Def.'s Resp. at 32–34.

Commerce's determination that Antique Group failed to act to the best of its ability is unsupported by substantial evidence. First, Antique Group had complied with all prior deadlines throughout the course of Commerce's review. Second, as noted above, no party argues that Antique Group's failure to meet the 10 a.m. deadline was anything more than a calendaring error and, but for Commerce's arbitrary setting of the 10 a.m. deadline, Antique Group's response would have been timely. Third, Antique Group explained to Commerce that it had established remedial measures to prevent future late filings including: instructing its paralegal team to adopt new practices relating to calendaring and internal communication, and retaining U.S.-based counsel to monitor deadlines and assist with future submissions. *See* Req. to Refile Secs. ACD at 3. This evidence, without more, does not support a finding that Antique Group failed to act to the best of its ability. A single late response is not determinative that a respondent has not acted to the "best of its ability" to cooperate because "mistakes sometimes occur." *Nippon Steel Corp.*, 337 F.3d at 1382.

In light of the court's finding that Commerce unreasonably rejected Antique Group's second supplemental questionnaire response, and because Commerce otherwise failed to support its decision to apply total AFA, that decision must be remanded for reconsideration by Commerce, consistent with the agency's statute, regulations, and practices.

## III. Commerce's Corroboration of the AFA Rate Applied to Antique Group

In the interest of judicial economy, the court addresses the merits of Commerce's corroboration of the AFA rate applied to Antique Group in case, upon analysis of Antique Group's second supplemental questionnaire response, Commerce continues to find the use of total AFA warranted on some other basis.

### A. Legal Framework

Commerce is statutorily obligated to corroborate the AFA rate pursuant to 19 U.S.C. § 1677e(c). When using an adverse inference to select from among the facts otherwise available, Commerce may rely "on information derived from—(A) the petition, (B) a final determination in the investigation ..., (C) any previous [administrative] review ..., or (D) any other information placed on the record." 19 U.S.C. § 1677e(b)(2). "When Commerce 'relies on secondary information rather than on information obtained in the course of an

Case: 23-1661 Document: 53 Page: 13 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

investigation or review,' it 'shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal.' " *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1299 (Fed. Cir. 2021) (alteration in original) (quoting 19 U.S.C. § 1677e(c)).

Corroboration does not require Commerce to estimate what Antique Group's dumping margin would have been if Commerce had considered Antique Group to have cooperated or demonstrate that the dumping margin used by the agency reflects the alleged commercial reality of Antique Group. *See* 19 U.S.C. § 1677e(d)(3). Instead, "corroborating information means determining that [the information] 'has probative value.' " *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1380 (Fed. Cir. 2016) (quoting the Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1, at 870 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4199 ("SAA")).[14] Commerce evaluates the probative value of information by "demonstrating the rate is both reliable and relevant." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1354 (Fed. Cir. 2015).

[14] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements." 19 U.S.C. § 3512(d).

### B. Discussion

*\*8* In selecting an AFA rate for Antique Group, Commerce selected the highest dumping margin alleged in the petition, 323.12 percent. I&D Mem. at 41–42. Commerce explained that it corroborated the petition rate using certain transaction-specific margins from Pokarna's margin calculation. *Id.* at 42. Arizona Tile argues that Commerce failed to corroborate properly the AFA rate because it compared that rate to the dumping margins for certain of Pokarna's transactions, when, according to Arizona Tile, those transactions were of a distinct nature [15] that was not representative of Antique Group's sales. Arizona Tile's Mem. at 36–38. The Government and Cambria argue that Commerce corroborated the AFA rate by comparing the dumping margin of 323.12 percent alleged in the petition to individual dumping margins preliminarily calculated for Pokarna and found the rate to be within range of those individual dumping margins. Def.'s Resp. at 35–36; Cambria's Resp. at 22–24.

[15] At oral argument, the Government agreed with Arizona Tile's description of the distinct nature of the sales relied upon by Commerce (without conceding that the distinct nature rendered them inappropriate for purposes of corroboration). Oral Arg. 1:41:15–1:41:45. The distinct nature is business proprietary information, so the court does not further address the nature of the sales.

The record establishes that Commerce's decision to corroborate the petition margin using transaction-specific margins, when those transactions all shared a distinct feature, is not supported by substantial evidence. Transaction-specific margins may have probative value when the rate selected as

Case: 23-1661 Document: 53 Page: 14 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

AFA falls within a range of those transaction-specific margins. *See Deacero*, 996 F.3d at 1300 (sustaining Commerce's determination that the highest rate alleged in the petition was relevant when it was in the range of transaction-specific margins calculated in the immediately preceding administrative review); *Papierfabrik*, 843 F.3d at 1381 (sustaining Commerce's determination that the selected rate "fell within the range of transaction-specific margins calculated in [the second administrative review]" (alteration in original) (citation omitted)). Here, however, the Pokarna transactions Commerce used to corroborate Antique Group's AFA rate were not demonstrably relevant. Commerce used Pokarna sales with the certain sales characteristic that distinguished them from Pokarna's normal sales transactions. While Commerce is under no obligation to ensure that the corroborating sales, or the rate being corroborated, reflect Antique Group's commercial reality, the distinct characteristic of these sales indicates that they are not relevant for purposes of corroboration.

Because the court finds that Commerce failed to properly corroborate the petition rate, the court need not reach Arizona Tile's arguments that the selected petition rate was unduly punitive. If, upon remand, Commerce finds that the use of total AFA remains appropriate for Antique Group, it must select and, if necessary, corroborate any such rate consistent with this opinion and the statute.

**IV. Commerce's Departure from the Expected Method in Calculating the Non-Selected Company Rate**

**A. Legal Background**

In determining the rate for companies not selected for individual examination in an administrative review, Commerce looks to 19 U.S.C. § 1673d(c)(5) for guidance. *See, e.g., Albemarle Corp. v. United States*, 821 F.3d 1345, 1351–52 (Fed. Cir. 2016). Section 1673d(c)(5)(A) provides that the non-selected company rate is the "weighted average of the estimated weighted average dumping margins" determined for individually examined companies, "excluding any zero and *de minimis* margins, and any margins determined entirely" on the basis of the facts available. 19 U.S.C. § 1673d(c)(5)(A).

When the dumping margins assigned to all individually examined companies are zero, *de minimis*, or based on facts available, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated." *Id.* § 1673d(c)(5)(B). The SAA provides that the "expected method" to determine the non-selected company rate in these situations "will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." SAA at 873, *as reprinted in* 1994 U.S.C.C.A.N. at 4201. The SAA further provides that "if this [expected] method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." *Id.* The expected method is the default method, and the burden of proof lies with the party seeking to depart from the expected method. *See Albemarle*, 821 F.3d at 1353. Put another way,

Case: 23-1661 Document: 53 Page: 15 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

when Commerce seeks to depart from the expected method, as it did here, "Commerce must find based on substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different." *Id.*

**\*9** In *Albemarle*, where respondents were both found to have *de minimis* margins, instead of weight-averaging those results (as "expected"), Commerce decided to "carry forward" the results of the prior administrative review to determine the rate for non-selected respondents. *Id.* In reviewing that determination, the Federal Circuit outlined "at least two circumstances" in which Commerce may depart from the expected method to carry forward a rate from a prior period. *Id.* at 1357. As relevant here, departure may be reasonable if Commerce establishes that the market and margins relevant to the subject merchandise has not changed. *Id.* "There is no basis to simply assume that the underlying facts or calculated dumping margins remain the same from period to period." *Id.* at 1356.

**B. Factual Background**

For the *Preliminary Results*, Commerce applied the expected method by averaging the margins of Pokarna and Antique Group, and the agency assigned a preliminary rate of 161.56 percent to the non-selected companies. [16] *Prelim. Results*, 87 Fed. Reg. at 40,787; *see also* Prelim. Non-Selected Calc. Mem.at 2. For the *Final Results*, Commerce departed from the expected method by carrying forward the 3.19 percent non-selected companies' rate from the original investigation for the non-selected companies in this review. I&D Mem. at 54–55. Commerce stated that, "based on the history of rates for this *Order*, ... the [rate from the *Preliminary Results*] is not reasonably reflective of the non-selected companies' potential dumping margins during the POR." *Id.* at 54.

[16] Although Commerce stated that it weight-averaged the two dumping margins, *Prelim. Results*, 87 Fed. Reg. at 40,787, Commerce elsewhere explained that it used a simple average, rather than a weighted average, Prelim. Non-Selected Calc. Mem. at 1. Commerce could not weight-average the two dumping margins because to do so would reveal, at least between the two respondents, their proprietary import quantities. *Id.* Therefore, Commerce followed its practice of using the simple average, which it considered a "proxy" for the weighted average. *Id.* at 1, 3.

**C. Discussion**

Cambria argues that Commerce's review of the history of rates under the *Order* did not justify its departure from the expected method. [17] *See* Cambria's Mem. at 13–20. The Government, Federation, and Arizona Tile each respond that Commerce's review of the history of the rates supports its determination that 161.56 percent was not reasonably reflective of the non-selected companies' potential dumping margins during the POR. Def.'s Resp. at 40–41; Federation's Resp. at 14–17; Arizona Tile's Resp. at 18–20.

[17] Cambria also argues that Commerce ignored evidence that the average unit

Case: 23-1661 Document: 53 Page: 16 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

values of the respondents supported the preliminary non-selected respondents' rate and that Commerce erred by not considering alternative methods to calculate that rate. *See* Cambria's Mem. at 24–25, 34–36. The Government counters that Cambria's additional arguments either fail on the merits or were not exhausted. *See* Def.'s Resp. at 43–44, 46–48. Because the court agrees with Cambria that Commerce has not supported with substantial evidence its departure from the expected method, the court does not reach these additional arguments. On remand, parties will have the opportunity to fully raise these issues to the extent they remain relevant, and Commerce will have the opportunity to respond as appropriate.

Here, Commerce failed to support its departure from the expected method and use of a prior margin. Commerce asserted that while its "preference continues to be that [it] will use contemporaneous information where possible, in this instance, the expected method is not reasonably reflective of the potential dumping margins of the non-selected companies." I&D Mem. at 55. However, in merely referring to "the history of rates," [18] Commerce "simply assume[d] that the underlying facts or calculated dumping margins remain[ed] the same from period to period," *Albemarle*, 821 F.3d at 1356, such that the expected method was not reasonably reflective of the dumping margin. But that assumption does not amount to substantial evidence. *See OSI Pharm., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) (" 'Mere speculation' is not substantial evidence." (citation omitted)).

---

[18] Counsel for Arizona Tile averred at oral argument that Commerce also looked at data from the second administrative review in an attempt to strengthen the position that Commerce reviewed contemporaneous data. Oral Arg. 1:57:00–1:57:50. This subsequent data is not referenced anywhere in Commerce's explanation. The court may not accept counsel's *post hoc* rationalizations for agency action; an agency's decision must be upheld, if at all, on the basis articulated by the agency itself. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

**\*10** Commerce fails to identify substantial evidence to establish that any one segment is more representative than a single other segment. This litigation involves the *first* administrative review of this order, so the "history" Commerce relies upon is merely one segment—the original investigation conducted in 2020. Commerce failed to explain why the investigation is more probative than the first administrative review. Commerce even acknowledged the lack of history when it rejected a request by Cambria to review the historical rates to justify the use of sampling exporters of varying sizes in this review. Commerce replied, "[a]t this time, there is *limited evidence* to provide Commerce with a reasonable basis to believe or suspect that the ... dumping margins for the largest exporters differ from those of smaller exporters." Resp't Selection Mem. at 6 (emphasis added). In other words, Commerce recognized that the history of dumping margins was insufficient to

Case: 23-1661 Document: 53 Page: 17 Filed: 06/10/2024

Cambria Company LLC v. United States, Not Reported in Fed. Supp. (2024)

show that the margins calculated for the largest exporters were not representative of the non-selected companies.

Commerce's departure from the expected method in calculating the non-selected company rate is not supported by substantial evidence.[19] On remand, Commerce must reconsider or further explain any decision to depart from the expected method.

[19] Commerce's departure here is striking considering its disinclination to depart from the expected method in other proceedings involving one or more AFA rates for the mandatory respondents. *See PrimeSource Building Prods., Inc. v. United States*, 46 CIT ——, ——, 581 F. Supp. 3d 1331, 1341–43 (2022), *appeal docketed*, No. 2022-2128 (Fed. Cir. Aug. 17, 2022); *Pro-Team Coil Nail Enter., Inc. v. United States*, 46 CIT ——, ——, 587 F. Supp. 3d 1364, 1372–74 (2022), *appeal docketed*, No. 2022-2241 (Fed. Cir. Sept. 22, 2022); *see also Bosun Tools Co. v. United States*, No. 2021-1929, 2022 WL 94172 at *4–6 (Fed. Cir. Jan. 10, 2022) (sustaining Commerce's averaging of zero and AFA rates to determine the rate for the non-selected respondents).

## V. Commerce's Determination Not to Apply an Export Subsidy Offset to the Non-Selected Company Rate

Arizona Tile also challenges Commerce's decision not to apply an export subsidy offset to adjust the non-selected company rate, arguing that Commerce's decision constitutes a ministerial error. Arizona Tile's Mem. at 40–44. In response, the Government avers that Commerce's decision was not ministerial but rather methodological in nature and that Arizona Tile failed to exhaust its administrative remedies with respect to the adjustment. Def.'s Resp. at 49–51.

In light of the need for Commerce to analyze Antique Group's second supplemental questionnaire response and, if appropriate, further corroborate any AFA rate and reconsider or better explain any decision to depart from the expected method, the court declines to reach the issue of the export subsidy offset. Parties may address this issue before the agency, as appropriate, in the course of the remand proceeding.

## CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby:

**ORDERED** that Commerce's *Final Results* are remanded to the agency for further action consistent with this opinion; and it is further

**ORDERED** that, the Parties must consult and, no later than June 27, 2024, provide the court with a joint status report proposing a reasonable date by which the remand proceeding will be completed; and it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000 words.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2722558

---

End of Document · © 2024 Thomson Reuters. No claim to original U.S. Government Works.